**ENNTEX OIL & GAS COMPANY (OF NEVADA) et al., Appellants,**

v.

**The STATE of Texas, Appellee.**

No. 8516.

Court of Civil Appeals of Texas, Texarkana.

Dec. 13, 1977.

Rehearing Denied Jan. 24, 1978.

Earl L. Yeakel, III, Kammerman, Yeakel, Trickey & Overstreet, Austin, for appellants.

John L. Hill, Atty. Gen. of Texas, Bill Flanary, Asst. Atty. Gen., Austin, for appellee.

ODEN, Justice.

Enntex Oil & Gas Company (of Nevada), Spindletop Oil & Gas Company, Oklahoma Coal & Oil Company, Laprada Oil & Gas Company, Texas Coal & Energy Company, Paul E. Cash, J. W. Heflin and Joe B. Owen, appeal from a judgment entered in the 14th Judicial District Court of Dallas County, Texas, permanently restraining and enjoining them from, "In any way, and by any manner or means, either or (sic) directly or indirectly, promoting, issuing, selling, offering to sell, negotiating for sale, advertising, dealing or distributing securities, including but not limited to, instruments representing interest in or under oil or gas leases or investment contracts within or from within the State of Texas, without complying with the registration and licensing requirements of Section 7(A)(1) and (12) of Article 581 V.C.S." Appellee, The State of Texas, acting by and through its Attorney General and at the specific request of its Securities Commissioner, applied for the permanent injunction ultimately entered alleging, inter alia, that the appellants offered to sell, sold, issued and dealt in and with securities, namely certificates representing interest in or under oil, gas and mining leases, without complying with the licensing and registration requirements of the Securities Act of Texas, Tex.Rev.Civ. Stat.Ann. art. 581–1, et seq. The judgment from which the appeal has been perfected was entered based on a finding that appellants offered for sale and did sell, issue and deal in and with securities, namely certificates or an instrument representing an interest in or under an oil, gas or mining lease, without complying with the Securities Act of Texas, Tex.Rev.Civ.Stat.Ann. art. 581–1, et seq. Appellants, with the exception of Spindletop Oil & Gas Company, do not allege that the evidence fails to support the fact findings of the trial court upon which the permanent injunction was predicated. Spindletop Oil & Gas Company does assert herein that there is no evidence in the record that it violated the Texas Securities Act, Tex.Rev.Civ.Stat.Ann. art. 581–1, et seq. The pivotal issues to be resolved on appeal pertain to appellants' allegations that their dealings and activities were solely in interstate commerce and any regulation thereof by appellee would be an unreasonable restraint on interstate commerce and that appellee applied the Texas Securities Act against them in a manner which violated their rights of equal protection and due process under the Constitutions of the United States and the State of Texas.

Enntex Oil & Gas Company (of Nevada), Oklahoma Coal & Oil Company, Laprada Oil & Gas Company, and Texas Coal & Energy Company, were corporations organized for the purpose of selling undivided interests in oil and gas leases located within the State of Texas. They were either incorporated in the State of Texas or doing business in the State of Texas pursuant to certificates of authority issued by the Secretary of State of Texas. These appellants, in furtherance of their corporate purpose, through telephone solicitations normally originated in Texas, sold undivided interests in oil and gas leases located in Texas to non-residents of Texas. An offering sheet describing the interests to be offered for sale was filed with the Securities and Exchange Commission of the United States pursuant to Schedule D of Regulation B promulgated by said Commission pursuant to the Securities and Exchange Act of 1933. Each offering sheet bore the following caveat on its first page:

"THE SECURITIES AND EXCHANGE COMMISSION HAS NEITHER AP-

PROVED NOR DISAPPROVED THE INTERESTS HEREBY OFFERED AND IT IS A CRIMINAL OFFENSE TO REPRESENT THAT THE COMMISSION HAS APPROVED SUCH INTERESTS OR PASSED UPON THEIR MERITS OR VALUE OR HAS MADE ANY FINDING THAT THE STATEMENTS IN THIS OFFERING SHEET ARE CORRECT."

Companies such as the corporate appellants and their offerings are commonly referred to as "Schedule D's" because of the nomenclature of the form filed with the Securities and Exchange Commission of the United States. A "Schedule D" filing is in fact an exemption from registration under the Securities and Exchange Act of 1933. All oil and gas leases offered for sale were located in the State of Texas. The appellants did not make any sales to Texas residents; however, monies derived from sales to nonresidents of Texas were sometimes received in Texas and deposited to bank accounts maintained in Texas. The offering sheets filed with the Securities and Exchange Commission of the United States and mailed to potential investors were prepared in Texas and mailed to potential investors from the State of Texas. It is noteworthy that in many instances the only non-Texas aspect of the corporate activities was the location of the investor. Those appellants engaged in sales scrupulously avoided making sales to Texas residents.

Joe B. Owen owns 33⅓% of the issued and outstanding stock of Laprada Oil & Gas Company. Paul E. Cash and J. W. Heflin each own 33⅓% of the issued and outstanding stock of Oklahoma Coal & Oil Company, Laprada Oil & Gas Company and Texas Coal & Energy Company. Furthermore, Paul E. Cash and J. W. Heflin each own 41% of the issued and outstanding stock of Southern Bankers Investment Company which owns 100% of the issued and outstanding stock of Spindletop Oil & Gas Company. Spindletop Oil & Gas Company owns 100% of the issued and outstanding stock of Enntex Oil & Gas Company (of Nevada). The record is silent as to the identity of the owner or owners of the remaining 18% of Southern Bankers Investment Company stock, and the remaining 33⅓% of Texas Coal & Energy Company stock and Oklahoma Coal & Oil Company stock; however, Paul E. Cash and J. W. Heflin could, acting in concert, control the activities of all corporate appellants.

▓▓ It is not suggested that appellants' activities qualified as "exempt transactions" under Tex.Rev.Civ.Stat.Ann. art. 581–5 or that the securities offered (undivided interests in oil and gas leases located within the State of Texas) were "exempt securities" under Tex.Rev.Civ.Stat.Ann. art. 581–6. Article 581–4(E) provides that:

"The terms 'sale' or 'offer for sale' or 'sell' shall include every disposition, or attempt to dispose of a security for value. The term 'sale' means and includes contracts and agreements whereby securities are sold, traded or exchanged for money, property or other things of value, or any transfer or agreement to transfer, in trust or otherwise. Any security given or delivered with or as a bonus on account of any purchase of securities or other thing of value, shall be conclusively presumed to constitute a part of the subject of such purchase and to have been sold for value. *The term 'sell' means any act by which a sale is made,* and the term 'sale' or 'offer for sale' shall include a subscription, an option for sale, a solicitation of sale, a solicitation of an offer to buy, an attempt to sell, or an offer to sell, directly or by an agent or salesman, by a circular, letter, or advertisement or otherwise, including the deposit in a United States Post Office or mail box or in any manner in the United States mails within this state of a letter, circular or other advertising matter. Nothing herein shall limit or diminish the full meaning of the terms 'sale,' 'sell' or 'offer for sale' as used by or accepted in courts of law or equity. The sale of a security under conditions which entitle the purchaser or subsequent holder to exchange the same for, or to purchase some other security, shall not be deemed a sale or offer for sale of such other security; but no ex-

change for or sale of such other security shall ever be made unless and until the sale thereof shall have been first authorized in Texas under this Act, if not exempt hereunder, or by other provisions of law. Provided, however, advertising when made in compliance with Section 22 shall not be deemed a sale." (Emphasis added.)

The Securities Act regulates sellers and sales. *Brown v. Cole,* 155 Tex. 624, 291 S.W.2d 704 (1956); *Fowler v. Hults,* 138 Tex. 636, 161 S.W.2d 478 (1942); *Lewis v. Davis,* 145 Tex. 468, 199 S.W.2d 146 (1947). It applies if the seller is any link in the chain of the selling process. *Brown v. Cole,* supra; *Rio Grande Oil Co. v. State,* 539 S.W.2d 917 (Tex.Civ.App. Houston-1st Dist. 1976, writ ref'd n. r. e.). It is obvious from an examination of the quoted portion of the Securities Act and the holdings in the cited cases that the Securities Act applies to appellants and their sales activities even though the purchasers, who are not regulated by the Act, were non-residents of the State of Texas. The question thus presented is whether or not such regulation is an unreasonable restraint on interstate commerce in violation of the United States Constitution. A state statute affecting interstate commerce will be upheld where the statute regulates evenhandedly to effectuate a legitimate local public interest and its effects on interstate commerce are incidental unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. *Pike v. Bruce Church,* 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970); *Huron Portland Cement Co. v. Detroit,* 362 U.S. 440, 80 S.Ct. 813, 4 L.Ed.2d 852 (1960). A state is damaged if its citizens are permitted to engage in fraudulent practices even though those injured are outside its borders. *Rio Grande Oil Co. v. State,* supra. Clearly, the State of Texas has a legitimate local public interest in taking precautions that oil and gas leases covering its lands are not the subject of fraudulent security practices. The Texas Securities Act, Tex.Rev.Civ.Stat.Ann. art. 581–1, et seq., only applies to disposition of securities within the state and accordingly,

only incidentally touches interstate commerce. The incidental burden on interstate commerce created by the Act is insubstantial and not unreasonable. *Shappley v. State,* 520 S.W.2d 766 (Tex.Cr.App.1974). The incidental burden imposed upon interstate commerce in this case is not excessive when compared in relation to the putative local benefits. Accordingly, appellants' contention that the Texas Securities Act, as it applies to them, violates the interstate commerce clause of the United States Constitution is overruled.

■ Appellants concede that the Texas Securities Act, Tex.Rev.Civ.Stat.Ann. art. 581–1, et seq., is not in and of itself violative of the constitutional safeguards of equal protection and due process; however, they do urge that the Act, as applied to them, is unconstitutional inasmuch as the Securities Commissioner did not attempt to regulate "Schedule D" companies and offerings prior to August 20, 1975, and that, after that date, the Securities Commissioner was inconsistent in seeking relief against the various "Schedule D" companies operating in the State of Texas. We must overrule appellants' contention. The Texas Securities Act, Tex.Rev.Civ.Stat.Ann. art. 581–1, et seq., as written, is capable of uniform enforcement. The fact that a law may not be invoked against others could not in anywise affect its constitutionality because invoked against those such as appellants. *Ex Parte Boman,* 160 Tex.Cr.R. 148, 268 S.W.2d 186 (1954). It was held in *Super X Drugs of Texas v. State,* 505 S.W.2d 333 (Tex.Civ.App. Houston-14th Dist. 1974, no writ), that:

" . . . More must be shown than mere unequal application of a state statute to prove a violation of the equal protection clause of the fourteenth amendment to the United States Constitution. It is not sufficient to show only that the law is enforced against some and not others. There must be a showing of actual and purposeful discrimination against the individual himself or against a suspect classification in which he falls (such as wealth, religion, or race), with no

proper justifying governmental purpose in such classification. . . . "

Appellants have not shown, or attempted to show that they were actually and purposefully discriminated against by the State of Texas in these proceedings and we hold that their constitutional rights have not been violated.

■ Spindletop Oil & Gas Company urges that it did not violate the Texas Securities Act, Tex.Rev.Civ.Stat.Ann. art. 581–1, et seq., because it did not engage in any sales activities. Spindletop Oil & Gas Company is a wholly owned subsidiary of Southern Bankers Investment Company which in turn is controlled by Paul E. Cash and J. W. Heflin. Spindletop Oil & Gas Company owns all the issued and outstanding stock of Enntex Oil & Gas Company (of Nevada). Spindletop Oil & Gas Company owned all of the issued and outstanding stock of Enntex Oil & Gas Company (of Texas); however, prior to the instant litigation, Enntex Oil & Gas Company (of Texas) was dissolved with its parent, Spindletop Oil & Gas Company, acquiring all of its assets. Enntex Oil & Gas Company (of Texas) was a "Schedule D" company and actively engaged in selling undivided interests in oil and gas leases located in the State of Texas to non-residents of the State of Texas. Upon dissolution, its assets vested in its parent, Spindletop Oil & Gas Company. It had producing wells at the time of dissolution. The ownership of the wells was vested in the out-of-state investors and Spindletop Oil & Gas Company as the successor to the interests of Enntex Oil & Gas Company (of Texas). The term "dealer" as defined by Tex.Rev. Civ.Stat.Ann. art. 581–4(C) includes:

" . . . every person or company, other than a salesman, who engages in this state, either for all or part of his or its time, directly or through an agent, in selling, offering for sale or delivery or soliciting subscriptions to or orders for, or undertaking to dispose of, or to invite offers for, or rendering services as an investment adviser, *or dealing in any other manner in any security or securities within this state.* . . . " (Emphasis added.)

By managing the wells drilled by Enntex Oil & Gas Company (of Texas) which were owned jointly with out-of-state investors as a result of "Schedule D" offerings, Spindletop Oil & Gas Company became a "dealer" under the Texas Securities Act, Tex.Rev. Civ.Stat.Ann. art. 581–1, et seq., irrespective of the fact that it did not attempt to sell any securities. It was dealing with securities which should have been licensed and regulated under the Act. The trial court found as a fact that Spindletop Oil & Gas Company dealt with securities and such finding supports the permanent injunction entered against it. Enntex Oil & Gas Company (of Texas) should have registered the securities (undivided interests in oil and gas leases) with the Securities Commissioner when it originally disposed of them. The securities were at the time of disposition, and are now, subject to regulation. Regulation cannot be avoided simply by a wrongdoer such as Enntex Oil & Gas Company (of Texas) transferring its assets.

■ Joe B. Owen and J. W. Heflin assert that the court had no jurisdiction to enter the permanent injunction against them because they were not served with process. This assertion is made even though they filed an answer in the trial court and appeared in this Court. By answering, these appellants entered an appearance in these proceedings thereby dispensing with the necessity for the issuance for service of citation upon them. Tex.R.Civ.P. 121.

The judgment of the trial court is affirmed.