LUTHERAN BROTHERHOOD, American General Life Insurance Company, the Variable Annuity Life Insurance Company, Signal Capital Corporation, Creditanstalt–Bankverein, Sprout Growth Limited, Sprout Growth, LP, and DLJ Venture Capital Fund II, LP, Appellants,

v.

KIDDER PEABODY & COMPANY, INC., Appellee.

No. 6–91–091–CV.

Court of Appeals of Texas, Texarkana.

March 31, 1992.

Rehearing Denied April 28, 1992.

---

H. Lee Godfrey, Susman Godfrey, Houston, for appellants.

J. Eugene Clements, Porter & Clements, Houston, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

CORNELIUS, Chief Justice.

Lutheran Brotherhood and others, plaintiffs below, appeal from a take-nothing summary judgment in their suit against Kidder Peabody & Company, defendant below. The suit was based on allegations that Kidder sold worthless bonds to plaintiffs by negligently and deliberately making misrepresentations of material facts. Because we find that the summary judgment evidence raises genuine fact ques-

tions on the issues of misrepresentations, knowledge, and reliance, we reverse the summary judgment and remand the cause for trial.

## THE ISSUES

Although the defendant raises several other defenses, its principal arguments in support of the summary judgment are that plaintiffs, as sophisticated institutional investors who conducted their own investigation and who purchased the bonds through a private placement memorandum that expressly disclaimed any warranties, cannot recover on the basis of misrepresentation. We do not agree that these circumstances inevitably foreclose recovery.

## FACTUAL BACKGROUND

In November 1987, Browne Bottling Company (BBC) acquired All American Bottling Company (AABC) from Fair Winds Corporation through a leveraged buy-out (LBO). The LBO left AABC with a debt of approximately $100 million and placed heavy demands on its cash and revenue requirements. Of the $100 million, $65 million was owed to Heller Financial, Inc. The remaining $35 million was a subordinate debt in the form of a bridge loan made by defendant Kidder, which AABC intended to ultimately replace with permanent financing. The permanent financing was to be obtained from a private placement of subordinated securities to financial institutions. Proceeds from the permanent financing would be used to repay defendant's bridge loan.

To secure the permanent financing, AABC and BBC arranged to issue and sell high yield bonds, including subordinated notes and warrants for the purchase of stock. Defendant served as the placement agent for AABC. The private placement was limited to "accredited investors," defined as large, sophisticated financial institutions doing their own investigations and capable of making independent investment decisions. For this and other reasons, the private placement was exempt from registration under the securities laws that apply to public offerings of securities.

Defendant made several unsuccessful attempts to market the bonds. Another attempt was made in June of 1988. Defendant prepared a private placement memorandum (PPM) and made telephone calls from New York to potential investors nationwide, including all the plaintiffs, soliciting purchases. Plaintiff Lutheran Brotherhood received a call at its principal place of business in Minneapolis, Minnesota, from a Kidder salesman in Chicago. Plaintiff Signal received solicitations in Texas by phone from New York. Kidder vice-president Dawley offered bonds to the remaining plaintiffs by telephone calls from New York. Plaintiff American General received its solicitation at its principal place of business in Texas, as did Variable, an affiliate of American General. Plaintiff Creditanstalt received its offer in New York. Plaintiffs Sprout, Sprout LP, and DLJ, all affiliated organizations, received their offers in New York.

The initial PPM that defendant prepared and sent to plaintiffs contained the following disclaimer at Page 1:

> Kidder, Peabody & Co. Incorporated ("Kidder, Peabody") is acting as agent in the placement of the Securities described hereby. All of the statements made herein with respect to the business and operating results of AABC and its affiliates are based on the best judgment of management. The information contained in this Memorandum was obtained from the Company and other sources but no assurance can be given by Kidder, Peabody as to the accuracy or completeness of such information. Officers of the Company will be available by appointment to provide any additional information which prospective purchasers or their representatives may reasonably require as to the Securities or the affairs of the Company.

The PPM also contained these warnings about risks involved in the purchase of the bonds: AABC was highly leveraged with a substantial amount of debt; AABC's heavy debt made its ability to service the debt more susceptible to downturns in its business; the securities offered were subordinated to $65 million in one existing senior debt; the senior debt contained covenants which if violated could result in a default that could substantially impair AABC's ability to pay the bonds; in view of the substantial amount of funds needed by AABC for debt service and working capital, it was possible that AABC may be unable to meet its cash requirements from revenues, and in that event, additional financing would be needed, but no assurances could be given that additional financing would be obtained. In August of 1988, defendant prepared and distributed a supplemental PPM, which we will refer to in more detail later.

On August 22, 1988, the sales were closed. In the closing, each plaintiff executed a written purchase agreement with AABC. AABC made certain warranties in that agreement, essentially representing that there were no material facts which would adversely affect the company and its ability to pay the bonds. Each plaintiff also warranted in the purchase agreement that it had received a copy of the PPM and the supplement, that it had an opportunity to discuss AABC's business with its officers, that it was capable of evaluating the risks of the investment, and that it was relying only on the PPM and the supplement and had no guarantee of the ultimate value of the investment. The proceeds of the bond sales were paid by plaintiffs and went directly to defendant to liquidate its $35 million bridge loan to AABC.

AABC failed to maintain its financial status at the level required in its agreement with Heller Financial. Heller then exercised its right to bar payments to the bond holders. According to the plaintiffs' allegations, the bonds are now essentially worthless.

The plaintiffs filed suit against defendant for compensatory, rescissional, restitutional, and punitive damages. They asserted causes of action for fraud, civil conspiracy, negligent misrepresentation, gross negligence, breach of fiduciary duty, and violations of the Texas Securities Act, the Oklahoma Securities Act, and the Oklahoma Anti–Fraud Statute.

## SUMMARY JUDGMENT

■ At the outset, we note the requirements for summary judgment. A defendant moving for summary judgment on the whole case has the heavy burden of showing by uncontradicted summary judgment evidence that there is no genuine issue of fact as to at least one essential element of each of the plaintiffs' causes of action and that such element is negated as a matter of law. *Gibbs v. General Motors Corp.,* 450 S.W.2d 827 (Tex.1970); TEX.R.CIV.P. 166a; 4 R. MCDONALD, TEXAS CIVIL PRACTICE IN DISTRICT AND COUNTY COURTS § 17.26.2 (rev. 1984), and cases there cited.

■ Defendant here repeatedly asserts that the plaintiffs have failed to establish their causes of action. That is not the test, however. A plaintiff is not required to produce summary judgment evidence raising a material fact question on an essential element of its claim until the defendant/movant first conclusively negates such an element by summary judgment evidence. If the defendant's summary judgment evidence conclusively negates such an element, the plaintiff must then present summary judgment evidence raising a fact issue as to that element. If it does so, summary judgment is not proper. *Gibbs v. General Motors Corp., supra; Christensen v. Sherwood Insurance Services,* 758 S.W.2d 801 (Tex.App.–Texarkana 1988, writ denied); *Orozco v. Texas General Indemnity Co.,* 611 S.W.2d 724 (Tex.Civ.App.–El Paso 1981, no writ).

■ Summary judgment is a harsh remedy and should not be imposed unless the summary judgment evidence reveals that the plaintiffs' claims are patently unmeritorious. The procedure is particularly inappropriate when matters that are inherently those for a jury or trial judge—such as intent, knowledge, motive, reliance, and the like—constitute essential elements of recovery or defense. *Hilton v. Texas Investment Bank, N.A.,* 650 S.W.2d 545 (Tex. App.–Houston [14th Dist.] 1983, no writ); *Kolb v. Texas Employers' Ins. Ass'n,* 585 S.W.2d 870 (Tex.Civ.App.–Texarkana 1979, writ ref'd n.r.e.).

Defendant's motion for summary judgment reflected its contention that the plaintiffs' causes of action were defeated as a matter of law. It argued that plaintiffs' own representations in the purchase agreement and the disclaimer in the PPM conclusively demonstrated that plaintiffs did not rely on any representation by defendant. It also argued that it owed no duty to the plaintiffs; that no cause of action existed for economic loss because the suit was for breach of contract; and that the securities laws do not apply because all purchases of the securities occurred in New York, there was no privity between defendant and the plaintiffs, and the securities acts only permit suit for rescission in these circumstances. Defendant's motion also argued that the fact issues of whether there was a misrepresentation, whether there was a fiduciary or confidential relationship, whether plaintiffs justifiably relied on any misrepresentation, and whether defendant intended to defraud the plaintiffs were conclusively established against plaintiffs by the summary judgment evidence. The motion was supported by various documents, including the PPM, the supplementary PPM, the purchase agreement, and certain answers to interrogatories and the deposition testimony of numerous witnesses.

Plaintiffs responded to defendant's motion with argument and supporting references to interrogatory answers and deposition testimony. We will treat most of the allegations as to fact issues in the portions of this opinion relating to the various causes of action.

## MISREPRESENTATIONS

■ Plaintiffs alleged and referenced summary judgment evidence concerning certain misrepresentations by the defendant. This evidence includes testimony that Steven Browne, the chief executive officer of AABC, told Kidder's representatives that he had doubts about his company's ability to comply with its loan covenants and that Kidder did not reveal that information to plaintiffs; that Kidder knew that AABC's cash flow was weak and inadequate, contrary to the statement in the PPM that it was strong and stable, but

Kidder failed to so advise the plaintiffs; and that, although the PPM explicitly stated that "Heller Financial has expressed a strong interest in providing an increased term loan in the financing," Heller had actually refused to loan AABC additional money, and defendant knew that but failed to inform the plaintiffs.

■ Defendant contends that the statement in the PPM that Heller had a strong interest in lending additional money to AABC was corrected by a statement in the supplemental PPM that "the $10 million supplemental term loan from Heller Financial has been eliminated." The supplemental PPM did contain that statement, but liability under the Texas Securities Act and for negligent misrepresentation may be based, not only on a false statement, but on omissions to state a material fact necessary to make other statements not misleading. In view of the original PPM statement that Heller had a strong interest in lending additional money, a later statement simply saying that the loan has been eliminated could be found to be misleading. A statement that the additional loan had been eliminated could lead reasonable investors to conclude that AABC's financial condition was so strong that it did not need additional financing. The statement may not have been clear enough to convey the fact that Heller Financial had actually refused to loan additional funds to AABC because of its precarious financial position. These are fact issues which make summary judgment on the issue inappropriate.

Although defendant produced summary judgment evidence denying that it made knowing misrepresentations, plaintiffs produced controverting summary judgment evidence. Thus, fact issues were raised on at least some of the alleged misrepresentations.

### THE TEXAS SECURITIES ACT

■ Plaintiffs sought damages for misrepresentations pursuant to the Texas Securities Act, TEX.REV.CIV.STAT.ANN. art. 581–1, et seq. (Vernon 1964 & Supp.1992). That Act provides in Article 581–33(A)(2):

A person who offers or sells a security (whether or not the security or transaction is exempt under Section 5 or 6 of this Act) by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, is liable to the person buying the security from him, who may sue either at law or in equity for rescission, or for damages if the buyer no longer owns the security. However, a person is not liable if he sustains the burden of proof that either (a) the buyer knew of the untruth or omission or (b) he (the offeror or seller) did not know, and in the exercise of reasonable care could not have known, of the untruth or omission. The issuer of the security (other than a government issuer identified in Section 5M) is not entitled to the defense in clause (b) with respect to an untruth or omission (*i*) in a prospectus required in connection with a registration statement under Section 7A, 7B, or 7C, or (*ii*) in a writing prepared and delivered by the issuer in the sale of a security.

Defendant argues that it had no privity with the plaintiffs because AABC instead of Kidder sold the bonds and the Texas Securities Act cannot apply. We disagree.

■ Article 581–33(A)(2) applies if the defendant was any link in the chain of the selling process. *Brown v. Cole*, 155 Tex. 624, 291 S.W.2d 704 (1956); *Enntex Oil & Gas Co. (of Nevada) v. State*, 560 S.W.2d 494 (Tex.Civ.App.–Texarkana 1977, writ ref'd n.r.e.), *appeal dism'd, want of federal question*, 439 U.S. 961, 99 S.Ct. 445, 58 L.Ed.2d 419 (1978); *Rio Grande Oil Co. v. State*, 539 S.W.2d 917 (Tex.Civ.App.–Houston [1st Dist.] 1976, writ ref'd n.r.e.). Thus, one who "offers or sells" a security is not limited to those who pass title. *See Pinter v. Dahl*, 486 U.S. 622, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988). The Texas Act defines "sell" as any act by which a sale is made, including a solicitation to sell, an offer to sell, or an attempt to sell. Article 581–33(A)(2) applies to a person

who "offers or sells" a security. It is undisputed here that defendant acted as AABC's agent in the preparation of the PPM's and in the placement and offering of the bonds. In doing so, it dealt directly with the plaintiffs and was a seller within the meaning of the Act.

■ Defendant also contends that plaintiffs cannot recover damages under the Texas Securities Act, but may only obtain rescission since they still own the securities. The Act does state that the buyer "may sue at law or in equity for rescission, or for damages if the buyer no longer owns the security." We are of the opinion that the statute did not intend to limit the buyer to rescission only if he still owns the security, but that it used the phrase "if the buyer no longer owns the security" simply to emphasize that the buyer did not lose his right of action for damages if he no longer owned the security. Any other construction would render meaningless the phrase in the statute that the buyer may sue "at law or in equity," because rescission is exclusively an equitable remedy. There is authority to the contrary, however, indicating that the buyer may sue only for rescission if he still owns the security. *See Randall v. Loftsgaarden*, 478 U.S. 647, 106 S.Ct. 3143, 92 L.Ed.2d 525 (1986); *Wigand v. Flo-Tek, Inc.*, 609 F.2d 1028 (2nd Cir. 1979) (construing a comparable federal provision); *see also* Bateman, *Securities Litigation: The 1977 Modernization of Section 33 of the Texas Securities Act*, 15 HOUS.L.REV. 839 (1978). Nevertheless, plaintiffs can sue defendant, as a seller, for rescissionary damages under the Texas Securities Act, and for damages under their other causes of action. *See Vick v. George*, 671 S.W.2d 541 (Tex.App.–San Antonio 1983), *rev'd on other grounds*, 686 S.W.2d 99 (Tex.1984).

■ Finally under this point, defendant contends that not all of the plaintiffs can recover in the Texas court because some of them had no connection whatever with Texas and no part of their purchase occurred in Texas. We believe this contention is unsound. A suit for damages under Article 581–33 of the Texas Securities Act is a tort action. Tort actions are transitory in nature and can be instituted and tried in any court which has jurisdiction *in personam* of the defendant. *Copper State Mining Co. v. Kelvin Lumber & Supply Co.*, 227 S.W. 938 (Tex. Comm'n App.1921, holding approved); 20 AM.JUR.2D *Courts* § 123 (1965). Texas has *in personam* jurisdiction of the defendant because it has an office and does business in Texas. Thus, the plaintiffs may litigate their tort actions against defendant in the Texas court if they choose to do so. The law governing the actions is another matter, as we discuss later.

■ Article 581–33 does not require that the buyer prove reliance on the seller's misrepresentation or omission. *Rio Grande Oil Co. v. State, supra; see also Wood v. Combustion Engineering, Inc.*, 643 F.2d 339 (5th Cir.1981); Bordwine, *Civil Remedies Under the Texas Securities Laws*, 8 HOUS.L.REV. 657, 671 (1971); W. DORSANEO & P. WINSHIP, TEXAS LITIGATION GUIDE § 171.03(2) (1991). It is necessary, however, that the misrepresentation or omission be material. To be material, a misrepresentation or omission must have influenced the buyer's actions to the extent that the buyer would not have entered into the transaction had the representation not been made. *H.W. Broaddus Co. v. Binkley*, 126 Tex. 374, 88 S.W.2d 1040 (1936); *Adickes v. Andreoli*, 600 S.W.2d 939 (Tex. Civ.App.–Houston [1st Dist.] 1980, writ dism'd). Thus, there is little, if any, difference between materiality and reliance in the context of this case.

Plaintiffs produced summary judgment evidence by affidavit that they would not have purchased the bonds if they had known that the representations in the PPM about AABC's cash flow and Heller's interest in loaning additional money were false or misleading.

We conclude that the plaintiffs whose causes of action arose in Texas can recover under the Texas Securities Act if they sufficiently prove that defendant sold the bonds by means of a misrepresentation or omission of a material fact as defined in the Act and the defendant fails to prove

one of the defenses provided for in Article 581–33(A)(2).

## PLAINTIFFS' WARRANTIES

■ Defendant argues that even if some of the statements in the PPM's were false or misleading, it cannot be liable for them because of the warranties plaintiffs made in the purchase agreement.

Plaintiffs did warrant in the purchase agreement that they had an opportunity to discuss the business, management, and financial affairs of AABC with its management; that they had the opportunity to review the facilities of AABC and the information set forth in the PPM's; that they had such knowledge, experience, and skill in investing in equity and debt securities, including those of new and speculative companies, that they were capable of evaluating the merits, risks, and suitability of the investment; that they had not received or relied on any representations from AABC or its agents, *other than those contained in the PPM and its supplement* and the purchase agreement; and that they were aware that no guarantee had been or could be made as to the future value of the securities.

■ Defendant asserts that one cannot recover for misrepresentations when he has made his own investigation of the facts. That is too broad a statement of the rule. The rule is that one cannot recover for fraudulent misrepresentations when he knows the representation is false, or when he has *relied solely on* his own investigation rather than on the representations of the other party. *Kolb v. Texas Employers' Ins. Ass'n, supra.* Thus, the rule is one of *reliance* rather than an absolute bar to recovery when one has made his own investigation. That is demonstrated by *Kolb v. Texas Employers' Ins. Ass'n, supra.* In that case, even though the plaintiff had made his own investigation, he testified that he relied not solely on his investigation, but on the other party's representations as well. Consequently, there was a fact issue on reliance, and summary judgment was held to be improper. The rule has not been disapproved or weakened by cases such as *Koral Industries v. Security–Connecticut Life Ins. Co.,* 802 S.W.2d 650 (Tex.1990), and *First City Bank v. Global Auctioneers,* 708 S.W.2d 12 (Tex. App.—Texarkana 1986, writ ref'd n.r.e.). Those cases simply hold that a person cannot be barred from recovery for fraud simply because he *could have discovered the fraud had he exercised reasonable diligence.*

Accordingly, there are fact issues as to whether plaintiffs relied on their own investigations or on the defendant's representations in the PPM's. Indeed, the plaintiffs' warranties state that they are relying on the representations in the PPM's, and it is those representations that they allege are false and misleading, i.e., the statements that AABC's cash flow was sound and that Heller Financial had a strong interest in lending additional money to AABC.

■ Likewise, the fact that investors are sophisticated and experienced in high risk and speculative investments does not preclude, as a matter of law, their recovery for fraudulent misrepresentations. Rather, the investors' sophistication and experience are material evidence on the issue of reliance. If an investor is sufficiently sophisticated and experienced, that may be evidence that he did not rely on the seller's representations but on his own expertise. The degree of sophistication is evidence for the trier of fact to consider in deciding the issue of reasonable or justifiable reliance. *See Bykowicz v. Pulte Home Corp.,* 950 F.2d 1046 No. 90–2923 (5th Cir.1992); *Laird v. Integrated Resources, Inc.,* 897 F.2d 826 (5th Cir.1990); *Zobrist v. Coal–X, Inc.,* 708 F.2d 1511 (10th Cir.1983).

## DEFENDANT'S DISCLAIMER

■ Defendant contends that the PPM disclaimer precludes a recovery for any misrepresentation because it expressly states that all information was obtained by defendant from AABC and other sources and that defendant gave no assurance as to the accuracy or completeness of such information.

A disclaimer which states that the warrantor relies solely on someone else for the truth and completeness of the warranties protects the warrantor only to the extent that he, in fact, has relied on someone else's information. It will not protect him if the statements are false and he knows they are false, for in that case his statement that he relies on others for the truth of the information is itself false and he becomes a party to the fraud. *Ashland Oil, Inc. v. Arnett,* 875 F.2d 1271 (7th Cir.1989). Thus, if any statement in the PPM is false and defendant knew it was false or misleading, the disclaimer will not protect it from liability. Plaintiffs have raised fact issues as to the falsity or the misleading nature of representations in the PPM's and the defendant's knowledge of them. Consequently, if plaintiffs are able to prove those facts, the disclaimer would not bar a recovery.

## NEGLIGENT MISREPRESENTATION

Plaintiffs have also alleged that defendant was negligent in making misrepresentations and omissions in the PPM's. The Texas rule is that of the RESTATEMENT (SECOND) OF TORTS § 552 (1977), which provides that one who in the course of his business supplies false information for the guidance of others in their business transactions is subject to liability for pecuniary loss caused to them by their justifiable reliance on the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information. *Blue Bell v. Peat, Marwick, Mitchell & Co.,* 715 S.W.2d 408 (Tex.App.–Dallas 1986, writ ref'd n.r.e.); *Shatterproof Glass Corp. v. James,* 466 S.W.2d 873 (Tex.Civ. App.–Fort Worth 1971, writ ref'd n.r.e.).

Defendant argues that plaintiffs, as a matter of law, have no cause of action for negligent misrepresentation because it owed no duty to plaintiffs and because the plaintiffs cannot recover damages for negligence when their injury is caused by a breach of contract. *See Jim Walter Homes, Inc. v. Reed,* 711 S.W.2d 617 (Tex. 1986). We do not agree. The Restatement rule *imposes a duty* not to negligently supply false information to others for use in their business transactions. As for the breach of contract argument, defendant misapplies the rule. Plaintiffs' cause of action for negligent misrepresentation is not grounded in the breach of any contract. It is grounded in the tort of misrepresentation. They have produced summary judgment evidence that some of the information supplied in the PPM's was false and that defendant knew or should have known that they were false and misleading. They have also produced summary judgment evidence that they justifiably relied on the information. If they prove their allegations in this regard, they can support a cause of action for negligent misrepresentation.

## BREACH OF FIDUCIARY DUTY AND CONSTRUCTIVE FRAUD

Plaintiffs also alleged causes of action for breach of fiduciary duty and constructive fraud based on the violation of a relationship of trust and confidence. Defendant essentially negated either a fiduciary relationship or a confidential relationship by its summary judgment evidence. We do not find any controverting summary judgment evidence that would raise a genuine issue of fact as to these claims. We make the same conclusion concerning plaintiffs' claims for civil conspiracy.

## CHOICE OF LAW

Defendant filed a motion requesting the trial court to apply New York law to the entire controversy. The court overruled the motion and ruled that Texas law would apply. Defendant has assigned a cross-point in which it contends that this ruling was error.

Under the traditional choice of law rule, the forum court applies the law of the state where the tort occurred. Under the modern rule, the applicable law is determined by analyzing the various factors involved in the case to determine which state has the most significant relationship with the controversy. *Gutierrez v. Collins,* 583 S.W.2d 312 (Tex.1979).

The modern rule is stated in RESTATEMENT (SECOND) OF CONFLICT OF LAWS §§ 6,

145 (1971). The rule in fraud cases is seen in RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 148 (1971). Texas has adopted the modern rule. *Gutierrez v. Collins, supra.*

The Restatement rule lists the relevant factors to be considered in determining the choice of law. They are (1) the needs of the interstate and international systems; (2) the relevant policies of the forum state; (3) the relevant policies of other interested states and those states' interest in determining the particular issue; (4) the protection of justified expectations; (5) the basic policies underlying the particular field of law; (6) certainty, predictability, and uniformity of result; and (7) ease in determination and application of the law. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6.

Under Section 145, the contacts to be considered in applying the principles of Section 6 are (1) site of the injury; (2) where the conduct causing the injury occurred; (3) the domicile, place of incorporation, and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered.

Section 148, dealing with fraud, provides that when the plaintiff has suffered pecuniary harm because of his reliance on the defendant's false representations, and when the reliance took place in the state where the representations were made and received, that state's law will apply unless, with respect to the particular issue involved, some other state has a more significant relationship under the principles articulated in Section 6.

Although more than sixty-four percent of the total bonds were sold through solicitations, offers, and transactions in Texas, five of the eight plaintiffs purchased their bonds through offers and transactions occurring mainly in New York. When there are multiple plaintiffs, the choice of law must be made on an individual basis. *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985). Where true conflicts exist between Texas and New York law, Texas law may not be applied unless it has a significant contact or aggregation of contacts to the claims asserted by each individual plaintiff. Otherwise, the application of Texas law to the cause of a plaintiff lacking such contacts offends the constitutional guarantee of due process. *Phillips Petroleum Co. v. Shutts, supra.* Only American General, Variable Annuity, and Signal Capital have such contacts here. Thus, Texas law may properly be applied to their causes of action. New York law should be applied to the causes of action asserted by the other plaintiffs.

## DISPOSITION

Because of the legal principles set out hereinabove and the summary judgment evidence we have referred to, it appears that there are material issues of fact as to whether (1) the PPM and supplemental PPM contained false and/or misleading representations of material facts, (2) defendant knew or should have known that they were false or misleading, and (3) plaintiffs' justifiably relied on those representations. Thus, material issues of fact exist as to plaintiffs' causes of action for fraud, negligent misrepresentation, gross negligence, and violation of the Texas Securities Act. On the basis of the record as it existed before the trial court at the time it considered the motions for summary judgment, we find that summary judgment was proper as to the other causes of action asserted by the plaintiffs. There is but one judgment, however, and it is reversed. The cause is remanded for trial. As to the record before us, our decision is the law of the case. That law does not preclude the presentation of additional relevant facts at trial which might support the other causes of action on which we find no present issue of fact. *See Hudson v. Wakefield,* 711 S.W.2d 628, 631 (Tex.1986); *Governing Board v. Pannill,* 659 S.W.2d 670, 680–81 (Tex.App.–Beaumont 1983, writ ref'd n.r.e.); 4 R. MCDONALD, TEXAS CIVIL PRACTICE IN DISTRICT AND COUNTY COURTS § 17.-26.3 (rev. 1984).

The judgment is reversed and the cause is remanded for trial.

BLEIL, Justice, concurring.

I agree that there are fact issues raised by the summary judgment evidence and that the summary judgment should not have been granted. Having said that, I decline to join in those sections of the Court's opinion entitled "PLAINTIFFS' WARRANTIES," "BREACH OF FIDUCIARY DUTY AND CONSTRUCTIVE FRAUD," and "CHOICE OF LAW" because I do not believe those sections are necessary for the proper disposition of this appeal. Thus, I join in reversing the judgment and remanding the cause for trial.