**AFFIRMED; and Opinion Filed May 28, 2015.**



**In The**

# Court of Appeals
# Fifth District of Texas at Dallas

**No. 05-14-00189-CV**

**JACKSON FULGHAM DBA COMMERCE STREET PARTNERS, Appellant**
**V.**
**ALLIED PROPERTY AND CASUALTY INSURANCE COMPANY, Appellee**

**On Appeal from the 160th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. 11-08353**

## MEMORANDUM OPINION
Before Justices Lang-Miers, Whitehill, and Schenck
Opinion by Justice Schenck

Jackson Fulgham (Fulgham) appeals a jury's award of damages to his insurer Allied Property and Casualty Insurance Company (Allied). In two issues, Fulgham challenges the legal sufficiency of the evidence supporting the jury's verdict, on the finding of fraud and on the finding of unjust enrichment. We affirm the judgment. Because all issues are settled in law, we issue this memorandum opinion. Tex. R. App. P. 47.4.

### BACKGROUND

In July 2009, Fulgham made a claim under a property-insurance policy he purchased from Allied for damage to his roof he alleged was caused by a recent hailstorm. Allied's claims specialist inspected the exterior of Fulgham's building and estimated the cost of removing and replacing Fulgham's roof. After Allied issued a payment for the estimated cost, Fulgham contacted the claims specialist and claimed the repairs to the roof would cost more than the estimate. Allied's claims specialist obtained a comparison estimate to repair the roof "as Mr.

Fulgham had wanted it done," and in October 2009, Allied paid an additional amount to Fulgham for costs to repair his roof.

In December 2009, Fulgham called Allied's claims specialist to add the claim that he had suffered interior damage to his building. In January 2010, the claims specialist inspected the interior of Fulgham's building and became concerned that Fulgham had misrepresented the building's purpose on the declarations form as a commercial real estate office when the building had no internal cooling or heating system. In February 2010, Allied required Fulgham to complete and return a Sworn Statement in Proof of Loss. Allied then paid Fulgham for his claimed damages to the interior of his building. In April 2010, following Fulgham's representations that repairs were complete, and after receiving letters, contracts, and invoices submitted by Fulgham, Allied paid additional amounts for recoverable depreciation related to Fulgham's roof.

In July 2010, Fulgham submitted an invoice for costs for organizing, cleaning, and storing the contents of the building, despite the fact that Fulgham previously had denied on several occasions that he would make a claim for damaged contents. Allied's claims specialist inspected the contents of the building and determined little if any work had been done to organize or clean the contents since his last inspection. Fulgham now stated the claimed invoice was an estimate, rather than an invoice. In August 2010, the claims specialist returned with a claims manager and another representative from Allied to inspect the contents of the building. Fulgham submitted additional invoices to support his contents claim. Allied then issued payments to Fulgham for the contents as well.

At this point, Allied's payments to Fulgham totaled $899,160.00. The jury would later hear substantial evidence that Fulgham was fabricating his claimed losses and enlisting his employees to manufacture evidence in support of his fraud.

Fulgham then asserted additional damages related to his original claim, including debris removal, asbestos, business interruption, increased costs of construction, and destruction of papers and records.  In July 2011, Fulgham sued Allied, asserting contractual, statutory, and common-law claims related to the insurance policy, arguing that Allied improperly refused to participate in an appraisal process provided under the insurance policy in order to determine additional amounts under Fulgham's original claim.  Allied counter-sued Fulgham for fraud and unjust enrichment.  The trial court dismissed Fulgham's claims prior to trial.  The jury awarded Allied damages in the amount of $899,160.00, and the trial court rendered judgment on the jury's verdict.

## STANDARD OF REVIEW

When an appellant challenges the legal sufficiency of the evidence on a matter for which he or she did not have the burden of proof, the appellant must demonstrate on appeal that there is no evidence to support the adverse findings. *McCullough v. Scarbrough, Medlin & Assocs., Inc.*, 435 S.W.3d 871, 892 (Tex. App.—Dallas 2014, pet. denied).  Under a no-evidence point, we consider the evidence in the light most favorable to the verdict, indulging every reasonable inference in support of it. *Id.*  We are mindful in our review that jurors are the sole judges of the credibility of the witnesses and the weight to be given their testimony. *Id.*  A legal-sufficiency challenge fails if there is more than a scintilla of evidence to support the judgment. *Id.*  "The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *Id.*  Evidence that does no more than create a surmise or suspicion is insufficient to rise to the level of a scintilla and, in legal effect, is no evidence. *Id.*

**DISCUSSION**

Fulgham's first issue challenges the legal sufficiency of the evidence supporting the jury's finding of fraud.

In general, actionable fraud consists of a material false representation that (1) the speaker either knew to be false or was asserted without knowledge of its truth, (2) he intended to be relied upon, (4) was reasonably relied on, and (5) caused injury. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011). Fulgham argues that the record lacks sufficient evidence of Allied's reliance on Fulgham's misrepresentations in the application process. Fulgham further urges that Allied is legally precluded from claiming it relied on Fulgham's misrepresentations in the claims process because it conducted its own investigation. Finally, Fulgham raises issues with Allied's failure to comply with provisions of the Texas Insurance Code.

Fulgham urges that there is no evidence that Allied relied on any of the various false statements he made in the application process and that the jury's finding of Allied's reliance on Fulgham's statements in the claims process is contrary to the great weight of the evidence. The question posed to the jury on fraud did not distinguish between fraud in the application process or fraud in the claims process. Fulgham waived error, if any, in comingling these two bases for liability in a single fraud question by failing to raise a timely and specific objection at the trial court below. *Burbage v. Burbage*, 447 S.W.3d 249, 256 (Tex. 2014). Accordingly, evidence of reliance in the claims process is sufficient to support the jury's finding of fraud. Indeed, the jury heard ample evidence of Allied's reliance in the claims process. Allied's claims specialist testified he relied on Fulgham's representations that (1) his roof was damaged by a hailstorm during the policy period when it was not, (2) extra work was necessary in paying Fulgham more than the initial estimated cost to repair his roof when it was not, (3) the hailstorm led to damages

–4–

to the interior of the building when it did not, and (4) statements, invoices, and a contract to repair the roof were all issued by contractors when they were fabricated by Fulgham.

Independent of his factual challenges, Fulgham fashions a non-reliance argument to the effect that, as a matter of law, Allied could not rely on his misrepresentations in the claims process because it conducted its own investigation of his claim. This notion does not account for the prospect of fraud directed at the investigation itself. In that context, the Texas Supreme Court rejected this argument more than a century ago, leaving the fraud subject to a remedy despite the plaintiff's investigation where the defendant takes affirmative steps to frustrate it. *Ranger & Co. v. Hearne*, 41 Tex. 258, 260–61 (1874) (holding that a contract's recital that the purchaser of an engine satisfactorily examined the engine will not preclude the purchaser from showing the engine had defects the sellers of the engine hid with new paint and polish). Indeed, this rule has been in effect and in continuous operation since the founding of the Republic. TEX. CONST. OF 1836, art. IV, § 13 (directing Congress to adopt the common law of England as rule of decision); *see also Schneider v. Heath* (1813) 170 Eng. Rep. 1462 (Ct. Com. Pls.) 1462–63, 3 Camp. 506, 506–08 (cited with approval in *Hearne*, 41 Tex. at 261).

To be sure, it would initially appear that this Court rejected this ancient common-law norm in a 1950 opinion when we said "[w]here a party who claims to have been defrauded had the means to have discovered the fraud, if any existed, and undertakes to investigate for himself, . . . it must be held as a matter of law that he has knowledge of everything that a proper investigation would disclose, and hence would not be justified in acting on fraudulent representations . . . ." *Mann v. Rugel*, 228 S.W.2d 585, 587 (Tex. Civ. App.—Dallas 1950, no writ). However, on closer reading, the Court actually confirmed and embraced the rule laid down in *Hearne*. In particular, reliance can be defeated by a party's investigation only when he is "not hindered or prevented from doing so by any act of the other party." *Id.*; *see also M. L.*

*Mayfield Petroleum Corp. v. Kelly*, 450 S.W.2d 104, 110 (Tex. Civ. App.—Texarkana 1970, writ ref'd n.r.e.) (if the investigation is "free and unhampered and conditions are such that he must obtain the information he desires, he is presumed to rely upon his own investigation rather than on representations made to him").

Fulgham relies on decisions from our sister courts of appeal to support his interpretation that when one performs his or her own investigation of the facts, one cannot, as a matter of law, be said to have relied upon the misrepresentation of others. *See Chitsey v. Nat'l Lloyd's Ins. Co.*, 698 S.W.2d 766, 769 (Tex. App.—Austin 1985), *aff'd on other grounds*, 738 S.W.2d 641 (Tex. 1987); *Kolb v. Tex. Emp'rs Ins. Ass'n*, 585 S.W.2d 870, 872 (Tex. Civ. App.—Texarkana 1979, writ ref'd n.r.e.). However, neither decision discusses the effect of a defendant's systematic campaign to hinder or hamper the investigation of a plaintiff. The *Chitsey* court relied on *Kolb* to hold that when one makes his own investigation of the facts, he cannot, as a matter of law, be said to have relied upon the misrepresentations of others. *Chitsey*, 698 S.W.2d at 769. The *Kolb* court did agree with the general rule that where a person makes his own investigation of the facts, he cannot sustain a cause of action based on misrepresentations made by others, but the court reversed summary judgment granted in favor of the defendant on the grounds that the record was unclear as to whether the plaintiff relied solely on his own investigation. The Texarkana Court of Appeals later made clear that the assertion "that one cannot recover for misrepresentations when he has made his own investigation of the facts . . . is too broad a statement of the rule." *Lutheran Bhd. v. Kidder Peabody & Co., Inc.*, 829 S.W.2d 300, 308 (Tex. App.—Texarkana 1992, writ granted w.r.m.). Instead, the rule is that "one cannot recover for fraudulent misrepresentations when he knows the representation is false, or when he has *relied solely on* his own investigation rather than on the representations of the other party." *Id.* We do not read these opinions to be out of harmony with that of the Texas Supreme Court or those from

this Court. A party who claims to have been defrauded and conducted his own investigation will not be prevented from relying on representations made to him by the alleged fraudster so long as the party was hindered or hampered in his investigation by the alleged fraudster or did not rely solely on his investigation.

The jury heard plenty of evidence that Fulgham's employees, at his instruction, took numerous affirmative actions to hinder or hamper Allied's investigation and to misrepresent both the existence and the extent of his claimed loss. One employee testified that the building, including its roof, was previously damaged prior to the hail storm and that Fulgham had filed a claim with a different insurance company for fire damage to the building. The employee also related that Fulgham used those other insurance proceeds to remodel the building instead of replacing the roof. In his remodeling attempts, Fulgham removed pipes and installed beams that blocked the building's drainage system, forcing the rainwater to penetrate the ceiling.

Fulgham then installed a PVC pipe that caught the water coming through the roof and carried the water outside the building. The employee also testified Fulgham hired additional laborers to paint and repair the building in order to make it appear as if Fulgham had maintained the building before the hail storm and to disguise the fact that the damage, including the leak in the roof, existed prior to the hailstorm. According to the employee, Fulgham instructed him on how to answer Allied's claims specialist's questions regarding the damage to the building and its roof. Fulgham also directed the employee to represent to Allied's claims specialist and claims manager that steel beams stored in the building were damaged by leaks and required cleaning so that Fulgham could make custom furniture with them, when in fact that steel beams were leftover from a previous project and as such did not require cleaning. That same employee also testified that his contracting company, which was listed on the invoices sent to Allied's claims specialist, did not perform the work listed on the invoices and that although his signature was on the

–7–

invoices, he did not prepare or sign the invoices. A second employee testified that Fulgham instructed him to wear business clothes to a meeting with one of Allied's representatives and to present himself as an owner of a demolition company at a meeting between Fulgham and Allied's representative. The second employee also testified that Fulgham directed his employees to place documents in certain areas of the building in order to cause them to sustain water damage.

Based on the foregoing, we conclude that the record contains more than a scintilla of evidence that Allied relied on Fulgham's representations and that there is sufficient evidence from which a reasonable jury could have found fraud as charged. *See McCullough*, 435 S.W.3d at 892. There was also evidence Fulgham hindered or hampered Allied's investigation by covering up the physical evidence that the roof was not damaged when or as Fulgham claimed, by directing employees to lie to Allied's claims specialist, and by creating fraudulent invoices to support his claimed costs of repair, all of which a reasonable jury could find prevented Allied from discovering the fraudulent nature of his claims. *See Mann*, 228 S.W.2d at 587. The record contains evidence that Allied did not rely solely on its investigations, but instead also relied on Fulgham's representations. *See Lutheran Bhd.*, 829 S.W.2d at 308. Accordingly, we overrule Fulgham's first issue.

In his second issue, Fulgham urges that unjust enrichment is not an available cause of action because Allied, as an insurer, was limited to contractual claims and challenges the legal and factual sufficiency of the evidence supporting the jury's finding of unjust enrichment. Because the jury's fraud finding is sufficient to support the judgment, we need not address Fulgham's second issue. *See* TEX. R. APP. P. 47.1.

Finally, we briefly address Fulgham's arguments that Allied failed to comply with certain provisions of the Texas Insurance Code. Fulgham argues that under section 705.005, Allied was

required to provide notice to Fulgham that it refused to be bound by the policy. TEX. INS. CODE ANN. § 705.005 (West 2009). Fulgham also urges Allied was required to show his misrepresentations caused Allied to waive or lose a valid defense to the policy in order to rely on a policy provision concerning misrepresentation in a proof of loss. *Id.* § 705.003. These provisions govern an insurer's use of a policyholder's misrepresentations as grounds for *defense* against a policyholder's claims or to void or rescind a policy based on a provision in the policy prohibiting insured's misrepresentations. *See id.* § 705.005 ("A defendant may use as a defense a misrepresentation made in the application for or in obtaining an insurance policy"); § 705.003 (imposing requirements on insurer in order to allow insurer to rescind or void policy based on provision prohibiting insured's misrepresentations). In the instant case, the insurance policy provided that any material misrepresentations made by Fulgham in the application or claims process would void the insurance policy, but Allied did not seek to rescind or void the policy on that provision and did not obtain relief on those grounds. Instead, Allied sought and obtained relief on the grounds of its own affirmative claims of common-law fraud and unjust enrichment.

## CONCLUSION

We affirm the judgment.


/David J. Schenck/
DAVID J. SCHENCK
JUSTICE


140189F.P05

–9–



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

JACKSON FULGHAM D/B/A
COMMERCE STREET PARTNERS,
Appellant

No. 05-14-00189-CV      V.

ALLIED PROPERTY AND CASUALTY
INSURANCE COMPANY, Appellee

On Appeal from the 160th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. 11-08353.
Opinion delivered by Justice Schenck.
Justices Lang-Miers and Whitehill
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee ALLIED PROPERTY AND CASUALTY INSURANCE COMPANY recover its costs of this appeal from appellant JACKSON FULGHAM D/B/A COMMERCE STREET PARTNERS.

Judgment entered this 28th day of May, 2015.