United States Court of Appeals,

Fifth Circuit.

No. 93-8024.

Joe W. ROBERTS and Donald D. Roberts, Plaintiffs-Appellees,

v.

UNITED NEW MEXICO BANK AT ROSWELL, f/k/a First Interstate Bank of Roswell, Defendant-Appellant.

Feb. 28, 1994.

Appeal from the United States District Court for the Western District of Texas.

Before DUHÉ and EMILIO M. GARZA, Circuit Judges, and BLACK[*], District Judge.

EMILIO M. GARZA, Circuit Judge:

This is an appeal from a jury verdict for the plaintiffs, Donald and Joe Roberts ("the Roberts"), in an action for fraud and negligent misrepresentations. The jury awarded the Roberts $69,154.40 in damages, finding that employees of the United New Mexico Bank ("the Bank") had made both fraudulent and negligent misrepresentations to the Roberts. The Bank now appeals, and we affirm.

I

Donald Roberts owns an Oregon-based plant research company that researches, develops, and produces coriander and other spices. In 1987, Roberts, who had been commercially cultivating coriander in Oregon since 1982, began examining the possibility of growing coriander in West Texas because of the relatively longer growing

---

[*]Chief Judge of the Northern District of Texas, sitting by designation.

season there.  Roberts, along with Joe Roberts, his brother, successfully cultivated two test plots of coriander near El Paso and Van Horn, Texas.  Based on their success, the Roberts began searching for farmland that could accommodate a large-scale production of coriander.

Joe Roberts, after learning that the Bank owned property in the Dell City area, contacted the Bank and inquired about the land's availability.  Roberts subsequently met with two Bank employees—Melvin Adams, whom the Bank hired to liquidate its real estate holdings, and J. Wesley Willis, a senior vice-president—to discuss leasing the land.[1]  Roberts testified that Adams told him that the farm consisted of "very good land [with] very good water."  Adams also provided Roberts with a written appraisal of the farm prepared for the Bank;  the appraisal described the farm as being "highly productive" with "good" quality well-water.  The Roberts eventually decided to lease part of the west farm in March 1989.

The Roberts attempted to grow three coriander crops.  Unfortunately, however, the coriander plants died before maturity each time.  After the last crop died, the Roberts sued the Bank, alleging that the salt content of the soil and the well-water caused the crops to fail.  Evidence adduced at trial established that the three wells on the leased land contained between 3,000 and 4,000 parts per million ("ppm") of salt, "good" wells in the Dell

_____

[1]The land at issue was referred to at trial as "the Estes farm."  The farm, which the Bank obtained in July 1987, actually consisted of two separate farms—the east farm and the west farm. The Roberts actually leased tracts 13, 14, and 15, which were located on the west farm.

City area average only 1,700 ppm of salt, and "average" wells contain between 2,500 and 2,700 ppm. Based on that evidence, the jury found that the statements made by the Bank as to the land's productivity and the quality of the water supply constituted both fraudulent and negligent misrepresentations and awarded the Roberts their out-of-pocket costs. The Bank, which had moved for judgment as a matter of law at the close of the evidence, moved for judgment notwithstanding the verdict. The district court denied the Bank's motion, and the Bank appeals, arguing that the Roberts failed to carry their burden on several key issues at trial.

II

Under Texas law, a plaintiff may recover for fraud upon establishing that:

> (1) a material representation was made; (2) it was false when made; (3) the speaker knew it was false, or made it recklessly without knowledge of its truth and as a positive assertion; (4) the speaker made it with the intent that it should be acted upon; and (5) the party acted in reliance and suffered injury as a result.

*Beijing Metals & Minerals Import/Export Corp. v. American Business Ctr., Inc.,* 993 F.2d 1178, 1185 (5th Cir.1993); *Boggan v. Data Sys. Network Corp.,* 969 F.2d 149, 151-52 (5th Cir.1992). Additionally, "to establish fraud, [the plaintiff] must show that its reliance on [the defendant's] representations was justifiable as well as actual."[2] *Beijing Metals,* 993 F.2d at 1186. "To

---

[2]"Justifiable reliance is also an element of negligent representation." *Haralson v. E.F. Hutton Group, Inc.,* 919 F.2d 1014, 1025 n. 5 (5th Cir.1990). Courts, however, tend to "equate unjustifiable reliance in a negligent misrepresentation context with contributory negligence," a stricter standard than that applicable in an action for common law fraud. *Id.* (citing, *inter*

3

determine justifiability, courts inquire whether—given [the] plaintiff's individual characteristics, abilities, and appreciation of facts and circumstances at or before the time of the alleged fraud—it is extremely unlikely that there is actual reliance on the plaintiff's part." *Haralson v. E.F. Hutton Group, Inc.,* 919 F.2d 1014, 1026 (5th Cir.1990). The Bank argues that the evidence is insufficient to sustain the jury's finding of fraud because the Roberts failed to prove both that the Bank made any misrepresentations and that they justifiably relied on any statements made by Bank employees alleged to be misrepresentations.

On appeal, we employ the same standard used by the district court in reviewing the Bank's motion: we "must review the evidence in the light and with all reasonable inferences most favorable to the party opposing the directed verdict or judgment notwithstanding the verdict." *Fruge v. Penrod Drilling Co.,* 918 F.2d 1163, 1165-66 (5th Cir.1990); *see also Boeing Co. v. Shipman,* 411 F.2d 365, 374-75 (5th Cir.1969) (en banc). This standard of review

> is exacting. The verdict must be upheld unless the facts and inferences point so strongly and so overwhelmingly in favor of one party that reasonable [persons] could not arrive at any verdict to the contrary. If there is evidence of such quality and weight that reasonable and fair minded [persons] in the exercise of impartial judgment might reach different conclusions, the jury function must not be invaded.

*Western Co. of North Am. v. United States,* 699 F.2d 264, 276 (5th

---

*alia, Blue Bell, Inc. v. Peat, Marwick, Mitchell & Co.,* 715 S.W.2d 408, 415 (Tex.App.—Dallas 1986, writ ref'd n.r.e.)). Because we uphold the jury's finding that the Bank made fraudulent misrepresentations to the Roberts, *see infra,* we need not address the issue whether the Bank also made any negligent misrepresentations.

4

Cir.), *cert. denied,* 464 U.S. 892, 104 S.Ct. 237, 78 L.Ed.2d 228 (1983). We review questions of law, however, de novo. *Nealy v. Hamilton,* 837 F.2d 210, 211 (5th Cir.1988).

A

1

The Bank initially contends that the statements regarding the farm's productivity and the quality of the water were opinions, which cannot constitute actionable misrepresentations under Texas law. However, "[r]epresentations as to matters not equally open to parties are legally statements of fact and not opinions." *Wright v. Carpenter,* 579 S.W.2d 575, 580 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.); *see also Haralson,* 919 F.2d at 1029 (finding that representations as to the value of a financial institution were not statements of opinion "given [the defendant's] superior access to information"). The record adequately demonstrates that the facts concerning the quality of the water were not equally available to the Bank and the Roberts. For example, the Bank had owned the property for approximately twenty months before the Roberts sought to lease it, and Adams had been told by Bank employee Larry Brewton[3] that the water on the leased land was "really bad" and that the Bank should sell that land at any price because of the water problem. The Roberts, on the other hand, presented evidence demonstrating that they could not have discovered the water problems without paying over $7,000. *See*

_____

[3]The farm's previous owners had hired Brewton to manage the farm in 1980. The Bank retained Brewton in that capacity when it obtained the farm in 1987.

5

*Wright,* 579 S.W.2d at 580 (noting that the plaintiff home purchasers "could not have easily discovered the rotten roof because of the foliage hanging over it at the time of contract"). Accordingly, we find that the statements made about the water quality constitute actionable statements of fact about the present condition of the land. *See Commonwealth Mortgage Corp. v. First Nationwide Bank,* 873 F.2d 859, 865 (5th Cir.1989) (finding a statement that certain property was "an excellent location" to be "an assertion about the present condition of the land"); *Gibraltar Sav. v. LDBrinkman Corp.,* 860 F.2d 1275, 1301 (5th Cir.1988) (finding a representation that a business was "ongoing and successful" to be "unambiguous declarations of positive fact"), *cert. denied,* 490 U.S. 1091, 109 S.Ct. 2432, 104 L.Ed.2d 988 (1989).

2

The Bank further argues that even if it did make any representations as to the farm's soil and water quality, those representations were true statements as to the farm's *average* water and soil quality. To bolster its argument, the Bank points out that any statements made about the farm pertained to the farm as a whole and not to the tracts of land leased by the Roberts and that the average water quality of the Estes farm's eleven wells was "good."

As an initial matter, we note the Bank represented that the "West Farm [was] highly productive" and that the Estes farm's "[w]ater quality [was] good." Neither the appraisal nor Adams

6

indicated to the Roberts that these representations were true only as to the average productivity and water quality of the farm. Moreover, "[a] representation literally true is actionable if designed to create an impression substantially false." *State Nat'l Bank v. Farah Mfg. Co.,* 678 S.W.2d 661, 681 (Tex.App.—El Paso 1984, writ dism'd by agreement of the parties); *see also Commonwealth Mortgage,* 873 F.2d at 865; *Blanton v. Sherman Compress Co.,* 256 S.W.2d 884, 887 (Tex.Civ.App.—Dallas 1953, no writ). In the context of this case, it was within the province of the jury to find that the Bank's representations were designed to create a substantially false impression. Accordingly, regardless of the literal truth of the statements, the jury could reasonably conclude that the Bank's description of the property was designed to mislead and, hence, constituted fraudulent misrepresentations. *See Commonwealth Mortgage,* 873 F.2d at 865.

B

1

The Bank, without citing any authority, next contends that because Donald Roberts was a coriander expert and the Bank's employees were not, the Roberts "could not justifiably rely on any representations [made] by the Bank." However, the mere fact that Roberts was an expert regarding coriander does not preclude a recovery for fraudulent misrepresentations as to the nature of the farm and its water supply. *Cf. Kolb v. Texas Employers' Ins. Ass'n,* 585 S.W.2d 870, 872 (Tex.Civ.App.—Texarkana 1979, writ ref'd n.r.e.) (where the plaintiff in a fraudulent representation action

7

defeated the defendant's motion for summary judgment because the reason why the plaintiff consulted an expert did not relate to the defendant's misrepresentations). Moreover, even if the Roberts contended only that the Bank fraudulently misrepresented some fact about coriander production, an action for fraud would not be barred as a matter of law.[4] *Cf. Haralson,* 919 F.2d at 1026 (noting that the plaintiff's individual characteristics and abilities are factors relevant to determining whether the plaintiff actually and justifiably relied). Thus, here—where the misrepresentation went to the nature of the land and its water and not to any matter specifically related to coriander—reliance is not barred as a matter of law simply because Donald Roberts had substantial experience with the production of coriander. Instead, the

---

[4]In *Lutheran Brotherhood v. Kidder Peabody & Co.,* 829 S.W.2d 300 (Tex.App.—Texarkana), *judgment set aside and cause remanded for rendition of agreed judgment,* 840 S.W.2d 384 (1992), the plaintiffs alleged that the defendant sold worthless corporate bonds to the plaintiffs by negligently and fraudulently making misrepresentations of material facts. The court rejected the defendant's argument that the plaintiffs were barred from claiming reliance on the misrepresentation because they were sophisticated investors:

> [T]he fact that investors are sophisticated and experienced ... does not preclude, as a matter of law, their recovery for fraudulent misrepresentations. Rather, the investors' sophistication and experience are material evidence on the issue of reliance. If an investor is sufficiently sophisticated and experienced, that may be evidence that he did not rely on the seller's representations but on his own expertise. The degree of sophistication is evidence for the trier of fact to consider in deciding the issue of reasonable or justifiable reliance.

*Id.* at 308 (citing *Bykowicz v. Pulte Home Corp.,* 950 F.2d 1046 (5th Cir.1992); *Laird v. Integrated Resources, Inc.,* 897 F.2d 826 (5th Cir.1990)).

8

existence of any expertise or sophistication was a circumstance considered by the jury when it determined that the Roberts justifiably relied upon the Bank's misrepresentations.

2

The Bank further argues that the Roberts are barred from asserting reliance on the Bank's misrepresentations because the Roberts "were aware of facts that should have put them on reasonable inquiry as to the condition of the property and its groundwater." The Bank asserts that the Roberts received notice of possible problems with the farm and its water supply from: (1) the appraisal supplied by the Bank, (2) the inspection of the farm undertaken by the Roberts, and (3) comments made by Bank employee Larry Brewton. The Roberts, not surprisingly, contend that they were not aware of any facts suggesting that soil or water problems existed.

In Texas, a plaintiff's "failure to inspect or to investigate will not defeat an action in fraud [because t]he defrauded party is entitled to rely on the fraudulent party's representations." *Kerrville HRH, Inc. v. City of Kerrville,* 803 S.W.2d 377, 385 (Tex.App.—San Antonio 1990, writ denied). However, "knowledge of facts that would lead a reasonably prudent person to conduct further inquiry to clarify a misimpression or reveal a misrepresentation can be deemed equivalent to knowledge of the truth." *Gibraltar,* 860 F.2d at 1303. This duty of inquiry "extends only to those matters that are fairly suggested by facts that are actually known, rather than circumstances that merely

9

arouse suspicion in the mind of a reasonably prudent person." *Holmes v. P.K. Pipe & Tubing, Inc.,* 856 S.W.2d 530, 543 (Tex.App.—Houston [1st Dist.] 1993); *see also Lang v. Lee,* 777 S.W.2d 158, 163 (Tex.App.—Dallas 1989, no writ).

Viewing the evidence in the light and with all reasonable inferences most favorable to the Roberts, the record evidence indicates that the Roberts did not possess knowledge of facts sufficient to lead a reasonably prudent person to conduct further inquiry. For example, while the appraisal warned of several problems associated with the location of the farm and the farm itself, it failed to retreat in any way from its conclusion that the farm was highly productive and the water supply was of good quality. The Roberts, through their inspection of the farm, also did not learn of any facts suggesting that further inquiry into the salt content of the land or wells was necessary. Finally, although Brewton told Joe Roberts that two of the wells on the leased land were "relatively salty" and intended that statement to be a warning not to lease that land, the jury was entitled to infer, based on the Bank's prior misrepresentations, that Brewton's statement would not lead a reasonably prudent person to conduct further inquiry.[5] Moreover, the evidence adequately demonstrates that the Roberts could not have *reasonably* discovered the high salt content of the water. *See* part II.A.1 *supra; see also Wright,* 579 S.W.2d at 580 (noting that the plaintiff home purchasers "could not have easily

---

[5]Brewton also testified that it was possible that Joe Roberts would not have perceived his comments to be a warning.

10

discovered the rotten roof because of the foliage hanging over it at the time of contract").  Although the issue of justifiable reliance is close, we cannot say that " "the facts and inferences point so strongly and overwhelmingly in favor of [the Bank] that [we believe] that reasonable [persons] could not arrive at any verdict to the contrary.' "  *Granberry v. O'Barr,* 866 F.2d 112, 113 (5th Cir.1988) (quoting *Western Co.,* 699 F.2d at 276). Accordingly, we uphold the jury's finding that the Roberts justifiably relied on the Bank's representations.

III

The Bank next asserts that because the Roberts undertook their own investigation regarding the leased tracts, they are barred as a matter of law from alleging any reliance upon the Bank's representations.  This assertion, however, "is too broad a statement of the rule.  The [actual] rule is that one cannot recover for fraudulent representations when he knows the representation is false, or when he has *relied solely on* his own investigation rather than on the representations of the other party."  *Lutheran Bhd.,* 829 S.W.2d at 308;  *see also Bernstein v. Portland Sav. & Loan Ass'n,* 850 S.W.2d 694, 713 (Tex.App.—Corpus Christi 1993, writ denied) (same).[6]  After reviewing the record, we

---

[6]The Bank cites *Chitsey v. National Lloyd's Ins. Co.,* 698 S.W.2d 766, 769 (Tex.App.—Austin 1985), *aff'd on other grounds,* 738 S.W.2d 641 (Tex.1987), and *Lauglin v. FDIC,* 657 S.W.2d 477, 483 (Tex.App.—Tyler 1983, no writ), as support for the principle that "when a person makes his own investigation of the facts, he cannot, as a matter of law, be said to have relied upon the misrepresentations of others."  Both of those cases, in turn, relied on *Kolb v. Texas Employers' Ins. Ass'n,* 585 S.W.2d 870, 872 (Tex.Civ.App.—Texarkana 1979, writ ref'd n.r.e.), "a case

11

find that the evidence presented at trial supports the jury's verdict that the Roberts relied on the Bank's misrepresentations and not solely on their inspection of the leased land.[7] Accordingly, we reject the Bank's contention that the Roberts are barred as a matter of law from relying on the misrepresentations made by the Bank's employees.

## IV

The Bank's final contention is that the Roberts failed "to present evidence that the coriander crop failed as a result of salty soil or salty water." However, Donald Roberts, whom the Bank concedes to be an expert regarding coriander, testified that the crop did not fail because of disease, insects, or a lack of watering; instead, Roberts testified that the crop failed because

---

which did not state the proposition nearly so strongly." *Bernstein,* 850 S.W.2d at 712. Moreover, both *Bernstein,* 850 S.W.2d at 712-13, and *Lutheran Brotherhood,* 829 S.W.2d at 308, rejected the cases cited by the Bank as "too broad." We agree and choose to follow the more persuasive reasoning of *Bernstein* and *Lutheran Brotherhood. See also Camden Mach. & Tool, Inc. v. Cascade Co.,* --- S.W.2d ----, ----, 1993 WL 528425, *5 (Tex.App.—Ft. Worth Dec. 23, 1993) ("when a person makes his own investigation of the facts, *and knows the representations to be false,* he cannot, as a matter of law, be said to have relied upon the misrepresentations of another") (emphasis added); *cf. Koral Indus. v. Security-Connecticut Life Ins. Co.,* 802 S.W.2d 650, 651 (Tex.1990) (noting that "only the [defendant's] actual knowledge of the misrepresentations would have destroyed its defense of fraud").

[7]Moreover, we note that the inspection undertaken by the Roberts and Lynn Gentry, whom the Roberts hired to perform the actual farming duties, was not undertaken to determine the salt content of the water or soil, but instead to determine which of the farm's various tracts would be the easiest for Gentry to farm. *Cf. Kolb,* 585 S.W.2d at 872 (where the plaintiff defeated the defendant's motion for summary judgment because the reason why the plaintiff consulted an expert did not relate to the defendant's misrepresentations).

12

the salt content of the soil and the well water was too high. While the Bank appears to challenge Roberts's credibility, "such credibility choices are the jury's, not ours." *Gibraltar,* 860 F.2d at 1303; *see also Redditt v. Mississippi Extended Care Ctrs., Inc.,* 718 F.2d 1381, 1386 (5th Cir.1983) ("It is not the function of this court to make credibility choices and findings of fact."). Moreover, the jury's decision to credit Roberts is understandable given the Bank's apparently strategic decision not to introduce expert testimony refuting the conclusion reached by Roberts. Consequently, we will not disturb the jury's finding that the loss suffered by the Roberts was proximately caused by the Bank's misrepresentations of material fact.

V

For the foregoing reasons, we AFFIRM the judgment of the district court.