IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 95-50255
Summary Calendar

_____


CLAUS WERNER

                                        Plaintiff-Appellant,

                        versus

INTERNATIONAL BANK OF COMMERCE

                                        Defendant-Appellee.
_____

Appeal from the United States District Court for the
Western District of Texas
(SA-93-CV-703)
_____
November 24, 1995

Before JOLLY, JONES, and STEWART, Circuit Judges.

PER CURIAM:[*]

    The plaintiff, Claus Werner ("Werner"), appeals a judgment in
favor of the defendant, International Bank of Commerce ("IBC").
Having reviewed the record, the briefs of the parties, and the
order of the district court, we find no reason to reverse the
district court.

    [*]Local Rule 47.5 provides:  "The publication of opinions that
have no precedential value and merely decide particular cases on
the basis of well-settled principles of law imposes needless
expense on the public and burdens on the legal profession."
Pursuant to that Rule, the court has determined that this opinion
should not be published.

Werner is a sophisticated German real estate investor who, in late 1991, began investigating the possibility of purchasing the Republic of Texas Plaza in San Antonio, Texas. The Plaza consists of a thirteen-story "Tower" and a five-story "Small Building." Werner enlisted the assistance of Bernard Buecker, a San Antonio attorney and broker.[1] Buecker had previously represented a party who had contracted to purchase the Plaza for $10.5 million. In 1992, Buecker informed Werner that this contract had expired. Werner then travelled to Texas to inspect the Plaza and to ascertain a suitable bid price.

Based on his inspection, Werner allegedly decided to offer $8.5 million to purchase the Plaza. About this same time, however, Buecker told Werner that the International Bank of Commerce ("the bank" or "IBC") might be interested in purchasing the Small Building from Werner if Werner purchased the entire Plaza. In early April 1992, Werner and Buecker met with Malcolm Hartman, a representative of the bank. They discussed the possibility that the bank would actually make an offer on the Plaza and, if the offer were accepted, sell the Tower to Werner. Hartman allegedly told Werner that the bank was not interested in keeping the Tower if it purchased the Plaza. Werner decided that instead of bidding

---

[1]Werner claims that Buecker's relationship to him was only that of broker to client, and not of attorney to client. Buecker, on the other hand, contends that he is a lawyer, but not a real estate broker.

on the Plaza, he would wait to see if the bank made an offer. Ultimately, IBC did buy the entire Plaza, closing on the purchase in late September 1992. IBC did not, however, offer the Tower to Werner.

On April 15, 1992, several months before the bank's purchase of the Plaza, Buecker informed Werner by letter that "Mr. Hartman, the lawyer for the bank, said it would be very wise . . . for you to make an offer also on Republic of Texas Plaza, in case they decide not to go through with their offer." Buecker advised Werner to offer $9.4 million on the Plaza, but Werner decided to continue to wait "until [he] could determine just what IBC's plans really were." Although Werner testified by affidavit that he distrusted the advice of Buecker, this letter clearly put Werner on notice that he could not rely justifiably on any prior alleged representation that the bank may have made concerning sale of the Plaza.

Werner continued to meet with the bank or its representatives, and claims that, notwithstanding the admitted complete absence of any final agreement or terms of sale--formal or informal, in writing or oral--the bank made additional indications (after April 15, 1992) that it would sell the Tower to Werner if it were able to purchase the entire Plaza. Examination of the summary judgment record, however, including correspondence among Werner or his associates, and representatives of IBC, confirms that representations made after the April 15, 1992 letter (if any) were

even more indeterminate and less committal than those made before Buecker's letter advising Werner that he should bid on the Plaza himself. Moreover, as Werner alleges, some number of weeks before IBC submitted its bid on the property (it is not clear from the record exactly how long before the bid was submitted), IBC broke off all communications concerning the proposed purchase of the Plaza.

                                II

Texas law requires "justifiable as well as actual" reliance on a defendant's alleged misrepresentation to support recovery for fraud. Beijing Metals & Minerals Import/Export Corp. v. Am. Business Ctr., Inc., 993 F.2d 1178, 1186 (5th Cir. 1993). The district court, having considered summary judgment evidence submitted by both parties, and applying the standard enunciated by this court in Beijing and Roberts v. United N.M. Bank, 14 F.3d 1076 (5th Cir. 1994), held that Werner, as a matter of law, could not have justifiably relied on any alleged fraud by IBC. See Roberts, 14 F.3d at 1078 (discussing summary judgment standard of review in determining "justifiability" of reliance, requiring court to "inquire whether--given [the] plaintiff's individual characteristics, abilities, and appreciation of facts . . . it is extremely unlikely that there is actual reliance . . .") (emphasis added); see also Haralson v. E.F. Hutton Group, Inc., 919 F.2d 1014 (5th Cir. 1990) (holding that judgment must be granted in favor of defendant if summary judgment record establishes plaintiff could

not have justifiably relied on alleged fraudulent conduct as matter of law).

Based on the summary judgment evidence, the district court concluded:

> Werner could not justifiably have relied on the earlier misrepresentations he should not bid on the property, if misrepresentations there were,[2] after reading the letter from his attorney stating he should bid on the property.
>
> Furthermore, Werner states in his complaint communications with the Bank ceased at some point and there was no indication negotiations would continue in the future. As discussed above, an impasse in negotiations indicates no business arrangement has been finalized and, therefore, reliance upon representations made before the impasse would not be justifiable.
>
> Despite these facts and circumstances, Werner purportedly relied on the Bank's alleged misrepresentations as inducement to refrain from making a bid on the property. Even viewing the evidence in the light and all reasonable inferences most favorable to Werner, given Werner's individual characteristics, abilities, and appreciation of the facts, this Court concludes it is extremely unlikely there was actual reliance on Werner's part. This is especially true in light of the letter which made the Bank's position clear: Werner should bid on the property. For these reasons, this Court concludes IBC has proven the summary judgment record conclusively establishes Werner could not have justifiably relied on the alleged misrepresentations in not bidding on the property. IBC is therefore entitled to summary judgment as a matter of law.

---

[2]The district court's editorial comment, "if misrepresentations there were," seems right on the mark. Based on the affidavits and documents in the record, IBC probably had as strong an argument on its motion for summary judgment, had it chosen to pursue such an argument, that no evidence exists to support the first element of fraud--that a material representation was ever made in the first place.

District Court's Order of March 14, 1995 at 6-7 (citations omitted).

We agree with the district court's holding. It was unreasonable as a matter of law for Werner to place any reliance on the alleged misrepresentations of IBC, in light of the letter Werner received while on vacation to Mexico. Further, the district court might as easily have found another fraud element missing in this case--proof that IBC made its alleged representation with the intention that it should be relied upon by Werner. If IBC made any representation to Werner concerning sale of part of the Tower, we believe IBC made crystalline its intention that Werner not rely upon such representation, through its statements to Werner's attorney or broker in the April 15 letter.

### III

Therefore, for the reasons set out by the district court in its Order and Judgment of March 14, 1995, the judgment in favor of the defendant, International Bank of Commerce, is hereby

A F F I R M E D.