RIO GRANDE OIL CO. et al.,
Appellants,

v.

The STATE of Texas, Appellee.

No. 16699.

Court of Civil Appeals of Texas,
Houston (1st Dist.).

July 1, 1976.
Rehearing Denied July 29, 1976.

Farris, Pain & Horne, George R. Pain, Houston, for appellants.

John L. Hill, Atty. Gen. of Texas, Philip K. Maxwell, Chief Asst. Atty. Gen., William A. Marquis, III, Asst. Atty. Gen., Austin, for appellee.

PEDEN, Justice.

Rio Grande Oil Co. and ten individual defendants associated with it appeal from an order granting a temporary injunction and appointing a temporary receiver for their assets in this action brought by the State of Texas under the Texas Securities Act, Article 581–1 et seq., V.C.S., and other Texas statutes. The State alleged that Rio Grande Oil Co., a Texas corporation, was offering and selling unregistered securities

in the form of fractional interests in Texas oil and gas leases, that the company and the individual defendants associated with it were not properly registered with the State Securities Board, and that the defendants have engaged in fraudulent practices in offering and in making sales of these interests to investors. None of the investors or potential investors is a resident of Texas.

The defendants-appellants complain of the temporary injunction and temporary receivership in twelve points of error. We hold that the trial court did not abuse its discretion in issuing the temporary injunction, but we sustain the appellants' points of error complaining of appointment of a temporary receiver for the assets of seven of the individual defendants.

In their sixth and seventh points of error the appellants contend that the trial court erred 6) "in finding that each defendant acted as a securities dealer in connection with the commission of fraudulent practices" and 7) "in finding that certain fraudulent practices were committed by each defendant when a substantial portion of said defendant's business consisted of acting as a securities dealer." These findings were recited in the trial judge's order. The appellants say there is no evidence that seven of them, defendants Ham, Barbour, Nigrelle, Floyd, Gardner, Berner, and Barnes, acted as securities dealers in connection with their activities with Rio Grande Oil, so the court should not have appointed a receiver for their assets. Point of error number nine covers the same ground.

The receivership section of the Securities Act, Article 581–25–1, provides:

"A. Whenever it shall appear to the commissioner [of the State Securities Board] . . . that:

"(1) any person or company, *a substantial portion of whose business consists of acting as a dealer* (as defined in Subsection C of Section 4 of this Act), whether or not duly registered by the commissioner as in this Act provided, shall have engaged in any act, transaction, practice, or course of business declared by Section 32 of this Act to be a fraudulent practice;

"(2) such person or company *shall have acted as a dealer in connection with such fraudulent practice*; and

"(3) the appointment of a receiver for such person or company, or the assets of such person or company, is necessary in order to conserve and protect the assets of such person or company for the benefit of customers, security holders, and other actual and potential claimants of such person or company the commissioner may request the attorney general to bring an action for the appointment of a receiver for such person or company or the assets of such person or company . . ." (emphasis added)

Subdivision B of the article provides that under certain circumstances the attorney general may bring an action in a district court for appointment of a receiver for such person or company.

The definition of "dealer" in Subsection C of Article 581–4, is:

"The term 'dealer' shall include every person or company, other than a salesman, who engages in this state, either for all or part of his or its time, directly or through an agent, in selling, offering for sale or delivery or soliciting subscriptions to or orders for, or undertaking to dispose of, or to invite offers for, or rendering services as an investment adviser, or dealing in any other manner in any security or securities within this state . . ."

"Salesman" is defined in Subsection D:

"The term 'salesman' shall include every person or company employed or appointed or authorized by a dealer to sell, offer for sale or delivery, or solicit subscriptions to or orders for, or deal in any other manner, in securities within this state, whether by direct act or through subagents; provided, that the officers of a corporation or partners of a partnership shall not be deemed salesmen, where such corporation or partnership is registered as a dealer hereunder."

■ It is undisputed that Rio Grande Oil was not registered as a dealer under the Act. There is evidence that the individual defendants were instructed to, and did, identify themselves to prospective investors on the telephone as owners, partners, or presidents of an oil and gas company, not as salesmen, and that at least some of them engaged in a number of fraudulent practices, but the evidence shows that the seven who complain in points of error six, seven, and nine were acting as salesmen, so they could not have been acting as dealers as defined in Subsection C of Article 581–4. We think the receiver should not have been ordered to take possession of their property.

"It has been noted that receivership legislation is 'born of a conviction that a courtroom is no place to run a business and that accordingly . . . is a remedy which should be used only as *a last resort.*' The drafters of new section 25–1 appear to have been mindful of the drastic nature of the receivership remedy generally and, therefore, have provided adequate safeguards against abuse. In proper cases, however, the use of this additional remedy should aid the commissioner in preserving the assets of those *acting* as dealers." Bateman and Dawson, *The 1975 Amendments to the Texas Business Corporation Act and the Texas Securities Act,* 6 Texas Tech.Law Review 951 (1975).

Rio Grande Oil and the other three individual defendants, Worthington, Machen, and Norton, do not contend that the evidence fails to support the findings in question as to them, so we do not disturb the appointment of a temporary receiver of their assets.

The appellants' eighth point of error is that the trial court erred in finding that the appointment of a receiver for each defendant is necessary for the benefit of customers, security owners and other actual and potential claimants. We hold that there is ample evidence of the existence of actual and potential claimants arising from sales of unregistered securities by unregistered salesmen. See Articles 581–33, 1302–5.07 and 5.08, and the Texas Consumer Protection Act, Texas Bus. & Com.Code, §§ 17.46 and 17.47(c).

■ The appellants' tenth point of error is that the trial court erred in finding that each defendant committed fraudulent practices in the sale of unregistered securities. They contend that "for there to be fraud in any civil type proceeding there must be a misrepresentation of a material fact and the allegedly defrauded party must be shown to have relied upon the alleged misrepresentation to his damage." They say there is no evidence any of the complaining witnesses relied on any material representation (from any defendant) of a present fact to his damage.

Further, that whatever representations made by the defendants that turned out to be untrue were not material, not relied on, were made in good faith, and did no damage.

The trial court's finding was that each of the defendants had "employed devices, schemes, artifices, practices and courses of business in the sale of the unregistered securities described hereinabove which are declared to be fraudulent practices by Article 581–32 . . . ."

Article 581–32 declares that these are "fraudulent practices":

(1) To employ any device, scheme or artifice to defraud or to obtain money or property by means of any *false* pretense, representation, or promise

(2) To make or attempt to make in this state any fictitious or pretended purchases or sales of securities

(3) To engage in any practice or transaction or course of business relating to the purchase or sale of securities which is in violation of law or which is fraudulent or which has operated or which would operate as a fraud upon the purchaser.

Article 581–4 F states:

"The terms 'fraud' or 'fraudulent practice' shall include any misrepresentations,

in any manner, of a relevant fact; any promise or representation or prediction as to the future not made honestly and in good faith, or an intentional failure to disclose a material fact; the gaining, directly or indirectly, through the sale of any security, of an underwriting or promotion fee or profit, selling or managing commission or profit, so gross or exorbitant as to be unconscionable; any scheme, device or other artifice to obtain such profit, fee or commission; provided, that nothing herein shall limit or diminish the full meaning of the terms 'fraud,' 'fraudulent,' and 'fraudulent practice' as applied or accepted in courts of law or equity."

The trial court was entitled to find from the evidence that the defendants committed many of the fraudulent practices defined above.

We think it clear that Articles 581–4 F and 581–32 extend the definition of common law fraud to the practices enumerated in them and that reliance is not a necessary element of them. For example, it would be difficult to see how reliance on a misrepresentation could be a necessary element of this fraudulent practice listed among others in Section 4 F: "the gaining . . . through the sale of any security, of an underwriting or promotion fee or profit, selling . . . commission or profit, so gross or exorbitant as to be unconscionable; . . . ." The Texas Court of Criminal Appeals found, for a similar reason, that Article 581–29, a penal statute, does not impose reliance upon the fraudulent representation as a necessary element of the offense. *Birchfield v. State*, 401 S.W.2d 825 (Tex.Cr.App.1966).

There is, furthermore, evidence of reliance on the misrepresentations shown to have been made. Without listing those misrepresentations we merely state, contrary to the appellants' contentions, that the trial judge was, beyond any question, justified in considering them to have been material, made in bad faith, and damaging.

The eleventh point of error is that "the trial court erred in finding that the State of Texas has suffered a probable injury in that the defendants have sold and offered to sell unregistered securities." The appellants say that since there were no purchasers within Texas, there is no evidence that Texas could have suffered irreparable injury and no evidence of any irreparable damage "done to legitimate securities dealers." Similarly, the twelfth point is that the court erred because the Texas Securities Act does not apply to sales made from Texas to residents of other states.

As we have noted, Rio Grande Oil is a Texas corporation, located in Houston, engaged in the selling of fractional interests in oil and gas leases located in Texas. Telephone calls by Rio Grande Oil sales personnel located in Houston were made to other states soliciting offers to buy such interests, and information provided by Rio Grande Oil was mailed from Texas to prospective out-of-state investors. Rio Grande Oil maintains its bank accounts in Houston and conducts portions of its business through them. On one occasion an investor and his wife came to Texas and visited the Rio Grande office. They were not offered any interests and their check was not solicited, but they were given glowing reports on the geology of some of the fields being developed and were told they should get in on them if possible.

We overrule these points. We believe a probable injury has been shown. A state is damaged if its citizens are permitted to engage in fraudulent practices even though those injured are outside its borders. *Brown v. Market Development, Inc.*, 41 Ohio Misc. 57, 322 N.E.2d 367 (1974). However, Article 581–32 specifically provides for the granting of injunctions to halt certain threatened practices; the State needs only to meet the statutory provisions and is not required to otherwise show probable injury. *Houston Compressed Steel Corp. v. State*, 456 S.W.2d 768 at 775 (Tex.Civ.App. 1970, no writ).

Further, we think it clear that the Texas Securities Act applies if any act in the selling process of securities covered by the

Act occurs in Texas. Article 581–7 states that no dealer, agent or salesman shall sell or offer for sale any security that has not been registered and is not exempt. Article 581–12 provides that "no person, firm, corporation or dealer shall directly or through agents or salesmen, offer for sale, sell or make a sale of any securities in this state without first being registered as in this Act provided."

The provisions of the Security Act are broad. The terms "sale", "offer to sell", and "sell" are defined in Article 581–4 E as including every disposition, or attempt to dispose of a security for value. In the words of the Act, the seller may be any link in the chain of the selling process. He is the one who performs "any act by which a sale is made." *Brown v. Cole,* 155 Tex. 624, 291 S.W.2d 704 (1956).

In *Shappley v. State,* 520 S.W.2d 766 (Tex.Cr.App.1975) the defendant was charged with having sold securities without having registered as a dealer or salesman in Texas in violation of Article 581–29(A). He sold them by telephone from Arizona to a Texas customer, the reverse of the parties' location in our case. The court held that since the term "sale" or "offer for sale" is defined in Article 581–4 E to include a solicitation of sale, an offer to sell, or an attempt to sell, the legislative intent clearly was to impose sanctions on almost any dealing in securities without a license, and the telephone negotiations at the very minimum amounted to an offer within the state.

In our case the defendants told their prospective purchasers to mail in their checks for the fractional interests. The "subscription of lease interest" form contained this provision: "It is understood that the sale to me (us) of the above interest(s) is subject to prior sale." The defendants were making solicitations of sales or attempts to sell; the acceptances were intended to be made and were made in Texas, so the sales were Texas ones.

The defendants' argument has been rejected by the Florida court in *State v. Hayes,* 305 So.2d 819 (Fla.App.1975), which held that the Florida Securities Act applies to Florida promoters who sell only to residents of other states.

In their first five points of error the appellants contend the trial court erred in admitting into evidence certain exhibits: 1) State's Exhibit 2, copies of "1–G Reports" obtained from the U.S. Securities and Exchange Commission, 2) State's Exhibit 3, a copy of a rule of the State Securities Board, 3) State's Exhibits 6 and 7, cease and desist orders from other states, 4) State's Exhibit 12, Rio Grande Oil's articles of incorporation, and 5) State's Exhibits 10 and 11, purportedly copies of the first shareholders' and board of directors' meetings of Rio Grande Oil.

■ State's Exhibit 2, the "Form 1–G Reports", was admitted during the testimony of Mr. Roy Mouer, Commissioner of the State Securities Board, who testified that he was the legal custodian of the Board's records and that he filed the reports as records of the Board after he received them from the Securities and Exchange Commission. He identified the reports as copies of Form 1–G, sent in response to his request, made in the regular course of business, certified by the records officer of the U.S. Securities and Exchange Commission, and attested to by its secretary. He said they are certified copies of the Schedule D offering sheets prepared by Rio Grande Oil on four of its oil and gas leases, showing sales made in those leases. Use of the reports was restricted by the S.E.C. in that he was to seek a protective court order so that names and addresses of investors would not be released to the public. The reports were tendered in evidence with a motion that they be kept under protective order of the court and were admitted under such an order. The appellants contend the records are not admissible because they are hearsay, because it is provided in 17 Code of Federal Regulations, Section 230.216 that "These reports shall be kept confidential unless the Commission shall order otherwise," and because there is no showing in the record that this federal regulation has been waived.

Article 3731a, Section 2, V.C.S., provides:

"Any written instrument which is permitted or required by law to be made, filed, kept or recorded . . . by an officer or clerk of the United States . . . or of any governmental subdivision of any of the foregoing, . . . shall, so far as relevant, be admitted in the courts of this State as evidence of the matter stated therein . . ."

Article 581–30 states in part:

"Copies of all papers, instruments, or documents filed in the office of the Commissioner, certified by the Commissioner, shall be admitted to be read in evidence in all courts of law and elsewhere in this state in all cases where the original would be admitted in evidence; . . . ."

We hold that the exhibit was properly admitted. The trial court was entitled to conclude that the S.E.C. had released the reports to the Board under conditions which satisfied the confidentiality requirements of the regulation.

■ State's Exhibit 3 was also admitted during the testimony of Commissioner Mouer. He identified it as a rule of the State Securities Board in effect since 1971 and formally adopted as a rule on October 27, 1975. It was certified by the Deputy Commissioner. Article 581–2 C states:

"The Commissioner, with the consent of the Board, may designate a Deputy Securities Commissioner who shall perform all the duties required by law to be performed by the Securities Commissioner when the said Commissioner is absent or unable to act for any reason."

The appellants' objection was that the exhibit was hearsay. We hold that the trial court did not err in admitting it under Article 581–30, supra, and Article 3731a § 1, which provides:

"Any written instrument . . . record . . . made by an officer of this State . . . or by his deputy . . . in the performance of the functions of his office and employment, shall be, so far as relevant, admitted in the courts of this State as evidence of the matter stated therein . . . ."

■ Commissioner Mouer testified that State's Exhibits Nos. 6 and 7 were records of the State Securities Board under his custody and control that had been obtained as a result of his request, in the course of his investigation, for certified copies of all cease and desist orders issued by state securities commissioners across the country. Exhibit No. 6 was certified by the Secretary of the Arizona Corporation Commission. Exhibit No. 7 was certified by the Missouri Commissioner of Securities. The objection was that they are hearsay. The exhibits were properly admitted under Article 3731a, § 2, and the appellants waived their objection by introducing evidence of the issuance of the orders in question.

■ Exhibits 10 and 11 purport to be copies of the minutes of a board of directors' meeting and of the first meeting of shareholders of Rio Grande Oil. The objection was that the instruments have not been shown to be authentic, so they are hearsay. Mr. Lanier, supervising examiner of the State Security Board's Houston office, testified that he had served an administrative subpoena on Rio Grande Oil calling for its books, records, corporate minutes of directors' and shareholders' meetings and that exhibits 10, 11 and 12 were obtained in response to that subpoena. The court admitted the exhibits for the limited purpose of showing that in response to a subpoena these instruments were given by the persons named. The State contends that the exhibits were admissible because they were an admission against interest since the statements were inconsistent with the position taken by the defendants in their general denial. We consider the identification to have been sufficient, but hold that the error, if any, in admitting them for the limited purpose stated has not been shown to be harmful. Rule 434, Texas Rules of Civil Procedure.

■ The appellants also contend that no witness proved the authenticity or custody of State's Exhibit 12, so it is hearsay. Exhibit 12 was certified by the Secretary of

the State of Texas to be a true and correct copy of the articles of incorporation of Rio Grande Oil Co. on file in his office. The exhibit was admissible under Articles 3720 and 3722, V.C.S.

The order of the trial court is amended to delete the following names from the list of those whose "property, financial books and records, and assets of whatever nature and wherever located (within or without the State of Texas)" were ordered taken into possession by the Temporary Receiver: George Michael Ham, Jessie Collins Barbour, Jr., Kenneth E. Nigrelle, Ronnie Graham Floyd, Lawrence Edward Gardner, Milford C. Berner, and Douglas Barnes. As thus amended, the order of the trial court is affirmed.