TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN








NO. 03-02-00524-CV






Citizens Insurance Company of America; Citizens, Inc.;

Harold E. Riley and Mark A. Oliver, Appellants


v.


Dr. Fernando Hakim Daccach, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT

NO. 99-09099, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING





O P I N I O N




 Appellants Citizens Insurance Company of America (CICA), Citizens, Inc., Harold
E. Riley and Mark A. Oliver (collectively "Citizens") (1) bring this interlocutory appeal challenging
the district court's order certifying a class action. See Tex. Civ. Prac. & Rem. Code Ann.
§ 51.014(a)(3) (West Supp. 2003). The underlying suit was brought by appellee Dr. Fernando
Hakim Daccach ("Dr. Hakim") against appellants for selling securities from Texas without
complying with the registration requirements of the Texas Securities Act (the "Securities Act"). See
Tex. Rev. Civ. Stat. Ann. art. 581-33A(1) (West Supp. 2003); see also 7 Tex. Admin. Code § 139.7
(2002). In three issues, Citizens contends that the district court abused its discretion in certifying
the class because: (1) the class definition accepted by the district court fails to presently and precisely
ascertain the proposed class; (2) the district court conducted an inadequate choice-of-law analysis;
and (3) none of the class certification requirements of rule 42 were established. We will modify the
class definition, and as modified, affirm the district court's certification order.


BACKGROUND


 This case concerns certain life insurance policies ("CICA policies") which Citizens
sells only to non-residents and non-citizens of the United States. The CICA policies all allow for
the assignment of policy dividends and other benefits to offshore trusts. The trusts use the assigned
dividends and other benefits to purchase common stock in Citizens, Inc. Although the CICA policies
contain varying options and features, they are all substantially identical with regard to the crediting,
earning and payment of dividends and benefits, and the policyholder's right to elect assignment to
the offshore trusts for the purpose of purchasing stock in Citizens, Inc. Evidence in the record shows
that in each year since 1996 there have been approximately 30,000 policyholders and at least
seventy-five percent of them have assigned their policy dividends and other benefits to the offshore
trusts. The average annual premium paid by each policyholder has been approximately $2,000.

 On August 6, 1999, the original two named plaintiffs brought a class action suit
against Citizens. Alleging numerous causes of action, their original petition principally complained
that Citizens sold life insurance policies "which could not be sold or approved for sale in the United
States by any state insurance or other regulatory agency and did not give the policyholders the rights,
benefits and protections of insurance policies approved for sale in the United States." (2) The plaintiffs
requested on their behalf and on behalf of similarly situated class members compensatory damages,
punitive damages, interests, court costs, and attorneys' fees. 

 By the time that a sixth amended petition had been filed in December 2001, seven
new plaintiffs had been added to the lawsuit, including Dr. Hakim, a neurosurgeon at a teaching
hospital in Bogota, Colombia. (3) However, the plaintiffs no longer seek class certification for any of
the original causes of action. Except for Dr. Hakim, the plaintiffs are bringing those claims against
Citizens only in regards to their individual CICA policies and are referred to as the "individual
plaintiffs." Dr. Hakim, on the other hand, has been designated the "class plaintiff" and asserts only
the class claims, which consist solely of Citizens' liability for being an unregistered dealer of
securities and selling securities from Texas in the form of the CICA policies. (4) See Tex. Rev. Civ.
Stat. Ann. art. 581-33A(1). (5) This theory was not part of the original petition, but was added in
plaintiffs' second amended petition. On behalf of the class, Dr. Hakim complains that "[Citizens]
has unlawfully avoided any regulation of the investment feature of the CICA Policies" and seek the
remedy of statutory rescission or, in the alternative, statutory damages if they have cancelled their
CICA policies. See Tex. Rev. Civ. Stat. Ann. art. 581-33D(1), D(3) (West Supp. 2003).

 In response to Dr. Hakim's class securities claims, Citizens filed a motion for
summary judgment arguing that the CICA policies do not qualify as securities under the Securities
Act. The district court denied Citizens' motion, concluding that the summary judgment evidence
of the parties established the existence of a genuine fact issue as to whether the CICA policies are
securities under Texas law. The district court then conducted a four-day hearing to consider Dr.
Hakim's amended motion for class certification of the claims against Citizens for violations of the
Securities Act. The court considered documentary evidence as well as testimony from Dr. Hakim,
officers and directors of the defendants, expert witnesses concerning the securities allegations, and
expert witnesses concerning the requirements to certify a class. The court granted Dr. Hakim's
certification motion and issued a twenty-page certification order in which it analyzed class definition,
notice to the class, class certification requirements, predominance of common issues of fact and law,
and the superiority of adjudicating the securities claims in a class action. 

 Furthermore, the order contained a detailed ten-page trial plan in which the court
stated that it had developed "an understanding of the issues and questions which will be decided by
the jury and/or the Court in the trial of the Class claims." The order presented four class-wide issues
to be resolved at trial: (1) whether a CICA Policy is a "security" pursuant to the Securities Act
(including the question of whether the CICA policies fall within an insurance exception to the
Securities Act); (2) whether Citizens sold or offered for sale the CICA policies from Texas; (3)
calculation of the statutory remedy pursuant to the Securities Act; and (4) attorneys' fees. The trial
plan also discussed the nature of the class claims and defenses, the type of evidence and expert
testimony necessary to aid in the jury's determination, and the proposed jury questions and
instructions for the first two issues listed above. Citizens disapproved of the certification order in
all respects and brought this appeal, arguing that the district court abused its discretion in granting
Dr. Hakim's motion to certify his claims for class action.


REQUIREMENTS OF CLASS CERTIFICATION


 The class action serves as a mechanism to eliminate or reduce the threat of repetitive
litigation, prevent inconsistent resolution of similar cases, and provide a means of redress for
individual claims that are too small to make independent actions economically viable. Ford Motor
Co. v. Sheldon, 22 S.W.3d 444, 452 (Tex. 2000). The principal purpose of the class action device
is efficiency and economy of litigation. Id. (discussing origins and general design of class action
device). Thus, when properly used, a class action saves the court's and the parties' resources by
allowing class-wide issues to be tried in an economical fashion. Id. (citing General Tel. Co. v.
Falcon, 457 U.S. 147, 155 (1981)).

 All class actions must satisfy the following four requirements: (1) numerosity--the
class is so numerous that joinder of all members is impracticable; (2) commonality--there are
questions of law or fact common to the class; (3) typicality--the claims or defenses of the
representative parties are typical of the claims or defenses of the class; and (4) adequacy of
representation--the representative parties will fairly and adequately represent the interests of the
entire class. Tex. R. Civ. P. 42(a); Southwestern Ref. Co. v. Bernal, 22 S.W.3d 425, 435 (Tex.
2000). In addition to these prerequisites, class actions must satisfy at least one of four subdivisions
of rule 42(b). Here, the district court found that Dr. Hakim established that this class action satisfies
rule 42(b)(4), which requires questions of law or fact common to the class to predominate over
questions affecting only individual members and that class treatment be superior to other available
methods for the fair and efficient adjudication of the controversy. See Tex. R. Civ. P. 42(b)(4); see
also Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 615 (1997); Bernal, 22 S.W.3d at 433.


STANDARD OF REVIEW


 A trial court is afforded considerable authority and discretion in defining the class,
determining whether to grant or deny class certification, and in decertifying or modifying the class
if necessary as the case develops. Intratex Gas Co. v. Beeson, 22 S.W.3d 398, 408 (Tex. 2000). On
interlocutory appeal, a trial court's decision to certify a class is to be reviewed for an abuse of
discretion. Henry Schein, Inc. v. Stromboe, 46 Tex. Sup. Ct. J. 103, 112, 2002 Tex. LEXIS 178, at
*40-41 (Oct. 31, 2002) (citing Bernal, 22 S.W.3d at 439). An appellate court must not substitute its
judgment for that of the trial court. Tana Oil & Gas Corp. v. Bates, 978 S.W.2d 735, 740 (Tex.
App.--Austin 1998, no pet.). We will not find an abuse of discretion simply because a trial court
determines an issue differently than we would. Downer v. Aquamarine Operators, Inc., 701 S.W.2d
238, 242 (Tex. 1985). In determining whether a matter should be litigated as a class action, a trial
court abuses its discretion if its decision is arbitrary, unreasonable, or without reference to any
guiding principles. Tana Oil, 978 S.W.2d at 741. Further, a trial court abuses its discretion if it does
not properly apply the law to the undisputed facts, but does not abuse its discretion if it bases its
decision on conflicting evidence. Id. at 740-41.

 In making its class certification decision, the trial court can consider the pleadings
and other material in the record, along with the evidence presented at the hearing. Employers Cas.
Co. v. Texas Ass'n of Sch. Bds. Workers' Comp. Self-Ins. Fund, 886 S.W.2d 470, 474 (Tex.
App.--Austin 1994, writ dism'd w.o.j.). In conducting the initial evidentiary review, the trial court
must conduct a rigorous analysis to determine whether all prerequisites have been met before ruling
on class certification. Bernal, 22 S.W.3d at 435. Thus, a "trial court has discretion to rule on class
certification issues, and some of its determinations--like those based on its assessment of the
credibility of witnesses, for example--must be given the benefit of the doubt." Schein, 46 Tex. Sup.
Ct. J. at 112, 2002 Tex. LEXIS 178, at *41. But in reviewing a class certification order, we are
prohibited from indulging "every presumption in favor of the trial court's ruling." Id. The
certification order must demonstrate actual compliance with the certification requirements because
"the trial court's exercise of discretion cannot be supported by every presumption that can be made
in its favor." Id. 


ANALYSIS


 Citizens appeals the certification order in three issues. First, Citizens challenges the
adequacy of the class definition approved by the district court. Second, Citizens contends that the
district court failed to conduct "a proper choice-of-law analysis necessary to determine whether any
common issues predominate over individual matters." Third, Citizens contends that the district court
failed to adequately establish the class certification requirements, including numerosity,
commonality, typicality, adequacy of representation, predominance, and superiority. Citizens
presents the issues of class definition and choice-of-law as "threshold issues." Indeed, "before a
reviewing court can consider a putative class's compliance with the rule 42(a) and (b) class-certification requirements, it must first consider the appropriateness of the certified class definition." 
Beeson, 22 S.W.3d at 403. Thus, we will first address Citizens' challenge to the certified class
definition and a related challenge to numerosity. However, for reasons we explain below, we need
not address Citizens' choice-of-law challenge as a separate "threshold issue." We will then address
the remaining class certification requirements. 


Class Definition and Numerosity

 In Beeson, the supreme court ruled that rule 42 implicitly requires that the class
members be presently ascertainable by reference to objective criteria. Id. at 403-04. The class
definition "should not be defined by criteria that are subjective or that require an analysis of the
merits of the case." Id. at 403. If the proposed class definition "rests on the paramount liability
question," then it cannot be objective because when the class definition is framed as a legal
conclusion, "the trial court has no way of ascertaining whether a given person is a member of the
class until a determination of ultimate liability as to that person is made." Id. at 404. Such a
definition creates a "fail-safe class" that would only be bound by a judgment favorable to the
plaintiffs, not a class also bound by a judgment favorable to defendants. Id. Members of a class who
did not prevail on the merits would not be a class and thus would not be precluded from bringing
individual claims. A fail-safe class is impermissible because of its failure to bind class members
regardless of the outcome. 

 The certification order in this case defined the class as follows:


The Class consists of all persons, who, during the Class Period (August 6, 1996
through the date the Class is certified): (1) purchased a CICA Policy and executed an
assignment to a trust for the purchase of Citizens, Inc. stock, or (2) paid any money
that, pursuant to a CICA Policy and assignment to a trust, was for the purchase of
Citizens, Inc. stock, or (3) were entitled to any cash benefits from a CICA Policy that,
pursuant to a CICA Policy and assignment to a trust, were for the purchase of
Citizens, Inc. stock. Specifically excluded from the Class are all persons who, within
the time period established by the judgment, do not surrender their CICA Policies
and take the other actions required to obtain the relief awarded by the Court.



Citizens specifically complains that the last sentence of the class definition causes it to run afoul of
Beeson, arguing that "the exclusionary language creates a future contingency, dependent on the
future state of mind of each class member." According to Citizens, this future contingency creates
a fail-safe class by being dependent upon a judgment in favor of the plaintiffs. We disagree.

 The trial court in Beeson defined the class as gas producers "whose natural gas was
taken by the defendant in quantities less than their ratable proportions." Id. The supreme court held
the trial court abused its discretion because the certified definition was the legal issue of whether
Intratex had taken nonratably from the producers. Id. Similarly, in Ford Motor Co. v. Sheldon, the
supreme court rejected a class defined as those "who suffered past and/or future damage as a result
of peeling or flaking paint on these vehicles caused by a defective paint process" or "who paid Ford
or a Ford dealership for a paint repair to their vehicle to repair peeling or flaking paint caused by a
defective paint process." 22 S.W.3d at 448. In Sheldon, if the paint process was not defective, then
no class would exist. Id. at 454. Thus, "including the defective paint process theory as an element
of the class definition impermissibly required a determination of the merits before the court could
ensure the existence of a class." Charlie Thomas Courtesy Leasing v. Taylor, 44 S.W.3d 684, 688
(Tex. App.--Houston [14th Dist.] 2001, no pet.) (discussing Beeson, 22 S.W.3d at 404). 

 Unlike the class definitions in Beeson and Sheldon, the class definition at issue here
is not prohibited because the class members are "presently ascertainable by reference to objective
criteria." Beeson, 22 S.W.3d at 403. This class includes any purchaser of CICA policies who 
assigned dividends and other benefits to the offshore trusts, and as the district court explained in the
certification order, this fact can be "objectively ascertained from the records of the Defendants." The
class definition does not rest on whether the CICA policies qualify as securities or whether the
policies were in fact sold or offered for sale from Texas; therefore, no resolution of the merits is
required before class membership can be determined, and the definition does not rest upon the
paramount liability question. Id. at 404. 

 Nor does the definition create a fail-safe class whereby the class members would be
bound only by a judgment favorable to the plaintiffs. The exclusionary language of which Citizens
complains was specifically added to the definition to address the district court's concern about
providing "notice to the Class about the issue of non-insurability that might result from a Class
member surrendering his or her CICA Policy to implement the statutory rescission remedy provided
by the [Securities Act]." The certification order further explains that "the exclusionary language . . .
allows individual Class members, in the event the Class' claims are successful, to decide they would
rather keep their CICA Policies and not take the steps required to obtain Court-ordered relief." 
(Emphasis added.) This is not a fail-safe class because, in the event of a judgment for Citizens, the
last sentence of the class definition will not operate to exclude anyone from the class, but only from
receiving the statutory remedy of rescission; all class members will be bound by a favorable or
unfavorable judgment. See id. Although the class members who retain life insurance coverage will
not be granted rescission, they will be precluded from later asserting an individual action against
Citizens based on article 581-33A of the Securities Act if Citizens prevails. 

 Citizens argues that the exclusionary language of the class definition provides the
putative class members a second, post-judgment opportunity to eliminate themselves as members
of the class. According to Citizens, "this future decision by putative class members is dependent
upon their future state of mind," and therefore "even in the event that [Dr. Hakim] should prevail
on the merits, there may be no class whatsoever." We believe that Citizens misinterprets the effect
of the class definition's last sentence, which likely results from their reading of the phrase "excluded
from the Class." (Emphasis added.) But this language does only what it says: should Dr. Hakim
prevail on the merits, the class members will forgo the statutory remedy and retain life insurance
coverage unless they affirmatively take the steps prescribed by the district court. Having already
received notice and chosen to remain in the class, the class members will not be allowed a second
opportunity to opt out of the class or the judgment. (6) To remove any doubt, and for the sake of
clarity, we will modify the last sentence of the class definition by substituting the word "remedy"
in place of the word "Class." (7) Cf. Beeson, 22 S.W.3d at 406-08 (noting that appellate courts can
redefine class in some circumstances, but refusing to do so after determining that "the present class
definition must be abandoned because it is fundamentally flawed"). Because the class definition is
not fundamentally flawed, we see no reason to remand to the district court to completely redefine
the class.

 Although Citizens challenges numerosity separately as part of its third issue, Citizens
does not specifically challenge the numerosity findings of the district court. Rather, Citizens merely
urges an argument based on the one it made against class definition. According to Citizens, if Dr.
Hakim prevails at trial on the merits, "and no CICA policyholder surrenders their life insurance
policies, the class size would undoubtedly fail the numerosity requirement of Rule 42." This
argument is without merit because, as we previously explained, the class members who do not opt
out by the notice deadline will be bound by the judgment. Whether the class members take the
action necessary to receive the statutory rescission remedy or damages has no bearing on the
numerosity analysis. We therefore hold that the district court did not abuse its discretion in defining
the class and accordingly overrule Citizens' first issue and its third issue to the extent that Citizens
challenges the district court's numerosity finding. 

Choice of Law, Commonality, Predominance of Common Issues

 Citizens dedicates its entire second issue to complaining that the district court abused 

its discretion by failing to engage in an adequate choice-of-law analysis. As part of its third issue,
Citizens challenges commonality, but restricts this challenge to arguing that the district court's
finding of commonality rests upon the erroneous conclusion that Texas law applies to the sale of
foreign life insurance policies occurring in fifty jurisdictions across the globe. Furthermore, in its
challenge to the district court's rule 42(b)(4) analysis, also part of its third issue, Citizens contends
that the absence of any meaningful choice-of-law analysis renders impossible any reliable
determination of whether common issues predominate. Thus, we will address choice-of-law in the
context of the commonality and predominance requirements. We will also dispose of Citizens'
challenges to commonality and predominance in a single discussion because the "commonality
requirement is subsumed under the more stringent Rule 42(b)(4) requirement that common questions
of law or fact predominate over questions involving individual members." E & V Slack, Inc. v. Shell
Oil Co., 969 S.W.2d 565, 569 (Tex. App.--Austin 1998, no pet.) (citing Amchem, 521 U.S. at 626). 
 The predominance test is used to determine whether common issues predominate over
individual issues, and inquires whether common or individual issues will be the object of most of
the efforts of the litigants and the court. Bernal, 22 S.W.3d at 433-34. A non-exhaustive list of
factors relevant to the predominance inquiry is the interest of members of the class in individually
controlling the prosecution or defense of their particular actions; the extent and nature of any
litigation concerning the controversy already commenced by or against members of the class; the
desirability of concentrating the litigation of the claims in the particular forum; and the difficulties
likely to be encountered in the management of a class action. Tex. R. Civ. P. 42(b)(4); Bernal, 22
S.W.3d at 433-34. 

 Rather than specifically addressing the predominance of the common questions
identified by the district court in its order, Citizens contends that choice-of-law is a barrier to
commonality and the predominance of common issues because of potential differences in the
applicable securities laws of foreign jurisdictions. According to Citizens, the district court abused
its discretion by failing to conduct a "most significant relationship" analysis pursuant to section 6(2)
of the Restatement (Second) of Conflict of Laws and thereby applying the securities laws of the
jurisdictions where the class members reside. See Torrington Co. v. Stutzman, 46 S.W.3d 829, 848
(Tex. 2000); Restatement (Second) of Conflict of Laws §§ 6, 188 (1971). However, Citizens
overlooks section 6(1) of the Restatement, which directs the application of Texas law to this case
and therefore renders the "most significant relationship" analysis inapplicable. 

 Section 6 of the Restatement provides:



 A court, subject to constitutional restrictions, will follow a statutory directive of
its own state on choice of law.

 When there is no such directive, the factors relevant to the choice of the
applicable rule of law include . . . .




Restatement (Second) of Conflict of Laws § 6 (emphasis added). If the Texas Legislature intends for
a statute to be applied to out-of-state facts, the courts will so apply it unless constitutional limitations
forbid it. Id. § 6(1) cmt. b. Application to out-of-state facts is permissible even when the local law
of another state would be applicable under usual choice-of-law principles. Id. "If construction of
the Texas statute justifies the application of Texas rather than [foreign] law, and that does not offend
the constitution, it is not necessary to engage in the choice of law analysis based on the significant
relationships set out in [section 6(2) of the Restatement]." Busse v. Pacific Cattle Feeding Fund,
896 S.W.2d 807, 814 (Tex. App.--Texarkana 1995, writ denied) (citing Siskind v. Villa Found. for
Educ., Inc., 642 S.W.2d 434 (Tex. 1982)). (8) 

 At the certification hearing, the district court heard extensive argument on whether
the Securities Act contains a statutory directive for its application to claims asserted by non-residents. For example, Dr. Hakim argued to the court that section 33A is a legislative choice-of-law
rule directing its application to this case if Citizens has"sold or offered for sale a security from this
state without registering as a securities dealer. We agree. A plain reading of the statute reveals that
the legislature intended to prohibit an unregistered seller of securities from selling in this state, even
when the purchasers are non-residents. See Tex. Rev. Civ. Stat. Ann. arts. 581-12, -33A(1) (West
Supp. 2003). Also, the Securities Board has promulgated a specific regulation entitled "Sale of
Securities to Nonresidents," which states in part that "[a]n issuer or selling agent who makes an offer
or sale from Texas, by any means . . . is a dealer and must comply with the dealer registration
requirements of the Securities Act." 7 Tex. Admin. Code § 139.7 (2002) (emphasis added). Finally,
case law makes clear that the Securities Act applies to sales from Texas to non-residents by
specifying that it applies when certain actions take place within Texas. See, e.g., Enntex Oil & Gas
Co. v. State, 560 S.W.2d 494, 497 (Tex. Civ. App.--Texarkana 1977, writ ref'd n.r.e.); Rio Grande
Oil Co. v. State, 539 S.W.2d 917, 921-22 (Tex. Civ. App.--Houston [1st Dist.] 1976, writ ref'd
n.r.e.) (concluding that the Securities Act applies to sales made from Texas to residents of other
states).

 Citizens argues that "the [Securities Act] was never intended to apply, even by the
state agency charged with its enforcement, to the sale of alleged securities occurring in foreign
jurisdictions." However, the class claims do not allege sales occurring in foreign jurisdictions, but
rather sales occurring in or from Texas. At trial--given that one of the common questions is
"whether the CICA Policies were sold from Texas"--Dr. Hakim will carry the burden of proving
to the factfinder that Citizens' activities in Texas relating to the CICA policies were critical links "in
the chain of the selling process" and therefore constituted an offer or sale of securities from Texas. (9) 
Rio Grande Oil, 539 S.W.2d at 922. Citizens seeks to employ the "most significant relationship"
analysis to preemptively reach the merits and show that it did not offer or sell securities from Texas. 
But as counsel for Dr. Hakim explained to the district court at the certification hearing, there is no
choice-of-law issue in this case "except for the same substantive issue on which liability depends." 
We conclude that the district court did not abuse its discretion by failing to engage in a "most
significant relationship" analysis. (10) 

 As part of its third issue, Citizens challenges the district court's predominance finding
by also arguing that, because all the claims except for the securities claims have been abandoned by
the class, Dr. Hakim improperly seeks to resolve a single issue by way of the class action rather than
the entire controversy. For support, Citizens cites to the statement in Bernal that "a judgment in
favor of the class members should decisively settle the entire controversy, and all that should remain
is for other members of the class to file proof of their claim." 22 S.W.3d at 434 (quoting Life Ins.
Co. of the Southwest v. Brister, 722 S.W.2d 764, 772 (Tex. App.--Fort Worth 1986, no writ))
(internal quotations omitted). 

 Citizens misapplies the language quoted by the supreme court in Bernal. In Bernal,
the causation and damages elements of the cause of action were unique to each class member and
therefore a single judgment could not settle the entire controversy. Id. at 436-37. Here, whether
Citizens violated the Securities Act's registration requirements is not a single issue or element of a
controversy, but rather a complete cause of action that constitutes an "entire controversy" unto itself. 
This case is more analogous to Compaq Computer Corp. v. LaPray, where the court of appeals
concluded that, although the class plaintiffs disclaimed consequential damages and abandoned
various claims, the common interests of absent class members had not been sacrificed. 79 S.W.3d
779, 793 (Tex. App.--Beaumont 2002, no pet.). "The fact that defendants engaged in a course of
activity giving rise to a variety of claims, only some of which are suitable for class treatment, does
not mean certification is inappropriate." Id. (citing Microsoft Corp. v. Manning, 914 S.W.2d 602,
610 (Tex. App.--Texarkana 1995, writ dism'd)). "Clients who have claims not raised in this class
action because the claims are unsuitable for class treatment can bring those claims on an individual
basis, and res judicata will not bar those claims because absent class members had no opportunity
to litigate those issues in this lawsuit." Sullivan v. Chase Inv. Servs. of Boston, Inc., 79 F.R.D. 246,
265 (N.D. Cal. 1978). 

 Finally, Citizens challenges predominance by arguing that, should the class claims
succeed, individual issues will predominate over the question of whether the class is entitled to
recover attorneys' fees pursuant to the Securities Act. The Securities Act provides that "[o]n
rescission or as a part of damages, a buyer or a seller may also recover reasonable attorney's fees if
the court finds that the recovery would be equitable in the circumstances." Tex. Rev. Civ. Stat. Ann.
art. 581-33D(7) (West Supp. 2003). Citizens directs us to the commentary of that provision, which
recommends that a court consider circumstances such as the conduct of the parties in making the
transaction; the conduct of both parties in the lawsuit; whether the defendant benefitted from the
violation; and fiduciary relationships. Tex. Rev. Civ. Stat. Ann. art. 581-33D(7) cmt. (West Supp.
2003). According to Citizens, the district court abused its discretion because its certification order
fails to explain how--as Citizens puts it--the "conduct of each party to each of the underlying
transactions" can be efficiently determined in a single trial to a single jury. See Bernal, 22 S.W.3d
at 434 ("If, after common issues are resolved, presenting and resolving individual issues is likely to
be an overwhelming or unmanageable task for a single jury, then common issues do not
predominate.").

 Citizens' argument focuses too literally on the commentary, which we regard as being
only persuasive. The trial court need not consider all the circumstances listed in the commentary;
rather, we read the commentary to suggest that the court consider all the circumstances that, in its
sound discretion, it deems relevant to violations of the registration requirements. Thus, we note that
article 581-33D(7) of the Securities Act applies to the whole of section 33, including 33A(2), which
creates liability for selling or offering securities by means of an untrue statement or the omission of
a material fact. See Tex. Rev. Civ. Stat. Ann. art. 581-33A(2) (West Supp. 2003). The
"circumstances" that might make the recovery of attorneys' fees "equitable" under this cause of
action could involve individualized issues of misrepresentation, reliance, or the subjective
knowledge of the policyholders. But here, because the heart of the dispute turns only on whether the
jury decides that the CICA policies constitute securities and whether they were sold from Texas, "the
conduct of each party to each of the underlying transactions" appears altogether irrelevant. (11) 
Furthermore, the jury will not be presented with an "overwhelming task" because the court rather
than the jury will consider the circumstances that would make recovery of attorneys' fees equitable. 
See id. art. 581-33D(7); cf. Bernal, 22 S.W.3d at 434. 

 We hold that the district court did not abuse its discretion in determining that the class
claims asserted by Dr. Hakim demonstrate commonality and that common issues of law and fact
predominate over any individual issues. Accordingly, we overrule Citizens' second issue
(concerning choice of law) as well as Citizens' third issue to the extent that it challenges
commonality and predominance. 


Typicality

 Typicality requires that class representatives possess the same interests and suffer the
same injury as the unnamed or absent class members. State Farm Mut. Auto Ins. Co v. Lopez, 45
S.W.3d 182, 191 (Tex. App.--Corpus Christi 2001, pet. dism'd w.o.j.). To be typical, class
representatives' claims need not be identical, but must arise from the same event or course of
conduct giving rise to the claims of other class members and must also be based on the same legal
theories. Weatherly v. Deloitte & Touche, 905 S.W.2d 642, 653 (Tex. App.--Houston [14th Dist.]
1995, writ dism'd w.o.j.). Here, the district court concluded that typicality had been satisfied with
regard to the securities claims, and furthermore that there "are no defenses asserted by the
Defendants which make Dr. Hakim atypical of the Class." 

 Citizens first contends that Dr. Hakim is not typical of the class because his securities
claim is barred by the statute of limitations, which prohibits a person from suing under section
33A(1) "more than three years after the sale." Tex. Rev. Civ. Stat. Ann. art. 581-33(H) (West Supp.
2003). We are not persuaded because the "argument that the presence of even an arguable defense
peculiar to different class members destroys the entire class, is incorrect." Adams v. Reagan, 791
S.W.2d 284, 290 (Tex. App.--Fort Worth 1990, no writ); see also Sun Coast Res., Inc. v. Cooper,
967 S.W.2d 525, 537 (Tex. App.--Houston [1st Dist.] 1998, pet. dism'd w.o.j.) (rejecting contention
that defenses of release and accord and satisfaction applicable to class members other than class
plaintiff necessarily destroys typicality); Dresser Indus., Inc. v. Snell, 847 S.W.2d 367, 373 (Tex.
App.--El Paso 1993, no writ) (holding that, although varying defenses existed as to different class
members, including a limitations defense, typicality was not destroyed). As in these cases, because
the class alleges an "overall scheme" on the part of Citizens which must be defended by arguing that
the CICA policies do not qualify as securities and were not sold or offered for sale from Texas, we
conclude that Dr. Hakim's securities claims are typical of the class he seeks to represent. See
Dresser Indus., 847 S.W.2d at 373. 

 Second, Citizens argues that Dr. Hakim is not typical of the class because he
purchased his CICA policies without relying on the Citizens, Inc. website, which repeatedly
characterized the CICA package as an "investment." However, because reliance is not an element
of a cause of action based on article 581-33A(1) of the Securities Act, Citizens' argument has no
relevance to the typicality inquiry. See Tex. Rev. Civ. Stat. Ann. art. 581-33A(1). Finally, Citizens
challenges typicality by arguing that Dr. Hakim's CICA policies do not contain arbitration clauses,
unlike other CICA policies purchased by some of the putative class members. We reject this
argument because the alleged distinction does not destroy the "nexus" that exists between Dr.
Hakim's injuries and those of the other class members. Dresser Indus., 847 S.W.2d at 372. We
therefore hold that the district court did not abuse its discretion in determining that the typicality
requirement had been met. 


Adequacy of Representation

 Two components make up the requirement of fair and adequate representation: (1)
an absence of antagonism between the class representative and the class members; and (2) an
assurance that the class representative will vigorously prosecute the class members' claims and
defenses. See Forsyth v. Lake LBJ Inv. Corp., 903 S.W.2d 146, 150 (Tex. App.--Austin 1995, writ
dism'd w.o.j.). The adequacy of representation is a fact question that the trial court determines based
on the individual circumstances of each case, and is addressed to the trial court's discretion. 
Manning, 914 S.W.2d at 614. A number of factors affect this determination, including adequacy of
counsel; potential conflicts of interest; the personal integrity of the plaintiffs; the representatives'
familiarity with the litigation and their belief in the legitimacy of the grievance; the manageability
of the class considering geographical limitations; and the ability to finance the class action. Forsyth,
903 S.W.2d at 150. 

 We first examine whether any antagonism exists between Dr. Hakim and the class
members. A conflict that goes to the very subject matter of the litigation will defeat a party's claim
of representative status. Id. at 151. Class certification may be denied if there is a possibility of
significant disagreement within the proposed class. Id. (citing Horton v. Goose Creek Indep. Sch.
Dist., 690 F.2d 470, 485-86 (5th Cir. 1982)). According to Citizens, an inter-class antagonism exists
here because Dr. Hakim seeks statutory rescission of the CICA policies, without regard to some class
members' potential desire to keep their CICA policies and maintain life insurance coverage. 
Citizens points to testimony by Dr. Hakim, where he stated that he did not believe in insurance and
purchased his CICA policy merely as an investment. However, Citizens has presented no evidence
that any class members oppose the remedy sought by Dr. Hakim. Nor does Citizens offer evidence
on how Dr. Hakim's decision to have his CICA Policy rescinded--which would require affirmative
steps on his part and on the part of any class member seeking rescission--would prevent other class
members from remaining insured. Indeed, the district court's definition of the class, as modified,
defeats Citizens' claim. Thus, because the possibility of an inter-class antagonism in this case is
merely speculative, the cases relied on by Citizens are easily distinguished. In Forsyth, this Court
treated the fact that at least twelve class members intervened and opposed the class-proponents'
objectives as evidence of actual inter-class antagonism. Id. at 151-52. In E & V Slack, one putative
class member testified that he opposed the remedy sought by the representatives because it would
mean dismantling a program that he and other class members still benefitted from. 969 S.W.2d at 

568-69. In contrast, here the investment scheme of the CICA policies might be terminated, but those
primarily interested in maintaining life insurance coverage can choose to reject that remedy and
therefore are not antagonistic to Dr. Hakim's objectives. (12) 

 Citizens also argues that the district court abused its discretion by finding that Dr.
Hakim would vigorously prosecute the claims and defenses of the class members. According to
Citizens, Dr. Hakim lacks knowledge concerning the details of the class action and passively
acquiesced to class counsel's decision to seek class certification only for the Securities Act claims. 
However, it is not necessary that Dr. Hakim, as class representative, fully comprehend the legal
terms and pleadings. See LaPray, 79 S.W.3d at 792-93. He must vigorously prosecute the claims
through his attorneys, which he can do by providing personal knowledge of the facts underlying the
complaint. See id. (citing Forsyth, 903 S.W.2d at 152; Weatherly, 905 S.W.2d at 652). According
to the certification order, Dr. Hakim had twice traveled to Texas to attend certification hearings; he
demonstrated the intelligence and personal integrity necessary to grasp the nature of the proceedings
and the issues; and he demonstrated familiarity with the class claims and a willingness to vigorously
prosecute those claims. The evidence supports the district court's findings. Furthermore, Dr. Hakim
cannot be rendered an inadequate class representative for abandoning those claims not appropriate
for class action treatment because, as we previously discussed, there is nothing impermissible about
that strategy. See id. at 793. Because the district court did not abuse its discretion, we overrule
Citizens' third issue to the extent that it challenges adequacy. 


Superiority

 Finally, Citizens disputes the district court's finding of superiority. A class action is
the superior method of adjudication when the benefits of class-wide resolution of common issues
outweigh any difficulties that may arise in the management of the class. Tana Oil, 978 S.W.2d at
743. The trial court should consider alternative procedures for disposing of the dispute and compare
these to the judicial resources and potential prejudice to absent class members involved in pursuing
the class action. Id. The trial court may consider whether: (1) class members have an interest in
resolving the common issues by class action; (2) class members will benefit from discovery already
commenced; and (3) the court has invested time and effort in familiarizing itself with the issues in
dispute. Id. Here, class members have an interest in obtaining rescission of securities that are
completely unregulated. To the extent that the rescission of individual CICA policies is too small
to justify the expense of traveling to the United States to engage in expensive litigation, the class
action mechanism provides for an efficient means to resolve the securities claims. As the district
court stated in the certification order: "[I]t is highly desirable to concentrate the litigation of the
identical claims of the members of the Class for violations of the [Securities Act] in this forum . . .
because the Court has already expended substantial time and effort on the Class' securities claims
and, as a result, is fully informed about the nature of the claims and defenses." We agree. Repeated
litigation over whether the CICA policies qualify as securities and whether they were sold from
Texas would be a waste of judicial resources.

 Citizens argues that, notwithstanding these findings, the fact that individual suits are
being pursued by every named plaintiff other than Dr. Hakim proves that pursuing the claims under
the Securities Act as a class action is not the superior method of adjudication. However, five of the
nine individual plaintiffs are not asserting securities claims and are not class members because they
sued only to recover death benefits. The other four plaintiffs bring their individual claims only
because they were combined with the death claimants' and the class claims. Thus, four individuals
out of a potential class of over twenty-five thousand have filed claims other than the class's securities 
claims. As Dr. Hakim points out, this is "hardly compelling evidence that Class members have a
significant interest in controlling the prosecution of their claims; in fact, it proves the opposite." 
Furthermore, because the securities claims are not predominated by individual issues such as reliance
and damages, Dr. Hakim has shown that a class action is both more fair and efficient in these
circumstances. Cf. Schein, 46 Tex. Sup. Ct. J. at 119, 2002 Tex. LEXIS 178, at *66 (holding that
superiority requirement not satisfied where plaintiffs "failed to show that a class action is either more
fair or more efficient" under the circumstances). The district court did not abuse its discretion;
therefore, we overrule Citizens' challenge to superiority in its third issue. 




CONCLUSION


 In conducting the initial evidentiary review, the trial court must conduct a rigorous
analysis to determine whether all prerequisites have been met before ruling on class certification. 
Bernal, 22 S.W.3d at 435. Our review of the record supports our conclusion that the district court
did not abuse its discretion in certifying the class. The district court conducted a thorough
certification hearing in which it went beyond the parties' pleadings in order to examine the claims,
defenses, relevant facts, and applicable substantive law in order to make a reasoned determination
of the certification issues. At the certification hearing, both sides presented a large quantity of
documentary evidence and expert witnesses. The district court's decision to certify the class is
explained in an extensive, lengthy certification order that contains a detailed trial plan. This
demonstrates that the district court conducted a rigorous review of the information presented, after
which it determined that the case met the supreme court's test of actual, rather than presumed,
compliance with the rule 42 certification requirements. Id.; Schein, 46 Tex. Sup. Ct. J. at 112, 2002
Tex. LEXIS 178, at *41.

 We conclude that the class definition presently and precisely ascertains the class
members, although we instruct the district court to modify the class definition in accordance with
this opinion. We conclude that the district court was not required to engage in a "most significant
relationship" choice-of-law analysis. Furthermore, we conclude that the district court did not abuse
its discretion by finding that all class certification requirements had been met. We therefore overrule
Citizens' issues on appeal and accordingly affirm the district court's order as modified. 



 __________________________________________

 W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Modified and, as Modified, Affirmed

Filed: April 24, 2003
1. CICA is a wholly-owned subsidiary of Citizens, Inc. Both are Colorado corporations with
their principal place of business in Austin, Texas. Harold E. Riley and Mark Oliver are officers and
directors of Citizens, Inc. and, as such, are "control persons" as defined by the Texas Securities Act. 
See Tex. Rev. Civ. Stat. Ann. art. 581-33F(1) (West Supp. 2003). 
2. Specifically, the plaintiffs alleged: (1) violations of the Texas Deceptive Trade Practices
Act; (2) breach of contract; (3) fraud and fraud in the inducement; (4) negligent misrepresentation;
(5) breach of duty of good faith and fair dealing; (6) violations of the Texas Insurance Code; (7)
equitable reformation of the CICA policies; (8) conspiracy; and (9) unjust enrichment and the
imposition of a constructive trust. 
3. Dr. Hakim purchased two of the CICA policies in 1993 and 1994. His dividends were
transferred from Citizens' office in Austin to a trust in Panama to purchase stock in Citizens, Inc.
4. Four of the individual plaintiffs have also been designated as members of the class. 
5. Article 581-33A(1) of the Texas Securities Act provides:


A person who offers or sells a security in violation of Section 7, 9 (or a
requirement of the Commissioner thereunder), 12, 23C, or an order under 23A
or 23-2 of this Act is liable to the person buying the security from him, who may
sue either at law or in equity for rescission or for damages if the buyer no longer
owns the security.


Tex. Rev. Civ. Stat. Ann. art. 581-33A(1) (West Supp. 2003). Section 12 prohibits an unregistered
seller of securities from making "a sale of any securities in this state." Id. art. 581-12A.
6. According to the certification order, the notice to the class shall include:



 a description of the nature of the class action;
 a description of the claims of the Class Plaintiff, the measure of damages if the
Class claims succeed, and the defenses of the Defendants;
 a full explanation of the non-insurability issue;
 description of the rights of the Class members to opt out of the Class and the
procedure for opting out of the Class; and
 a statement regarding the attorneys' fees that will be sought by Class counsel.



This notice satisfies the class notice requirements, see Tex. R. Civ. P. 42(c)(2), and makes clear that
if the class member has not opted out by a specified date, then he or she is bound by whatever
judgment the district court renders.
7. The last sentence of the class definition will therefore read as follows: "Specifically
excluded from the remedy are all persons who, within the time period established by the judgment,
do not surrender their CICA Policies and take the other actions required to obtain the relief awarded
by the Court."
8. Citizens does not make the argument that constitutional limitations forbid the application
of the Securities Act to the facts of this case. 
9. Citizens uses the same process in each country to obtain policyholders for the CICA
policies. Citizens does not sell the CICA policies directly to the policyholders, but rather
applications for the CICA policies are obtained by CICA's agents in the countries where the
policyholders reside. Dr. Hakim argues that there is nonetheless enough evidence in the record to
show that Citizens sells the CICA policies from Texas. For example, Citizens partially develops a
sales training manual in Austin, and the underwriting takes place in Austin. 
10. In its reply brief, Citizens also contends that the Securities Act cannot apply to the class
claims because it was never intended to apply to the sale of foreign life insurance policies. See Tex.
Rev. Civ. Stat. Ann. art. 581-4A (West Supp. 2003); Tex. Ins. Code Ann. art. 3.42(a) (West Supp.
2003). Citizens attempts to conflate this argument with its choice-of-law issue. However, Citizens
made this exact argument to the district court in its motion for summary judgment, which the court
denied. Whether the CICA policies are securities as defined by the Securities Act (including the
question of whether the CICA policies fall within an insurance exception to the Securities Act) is
another element of the class claims and has been identified by the district court as a common
question for the fact finder to decide with the aid of expert testimony. Thus, we need not address
it here. 
11. We note that Citizens would urge the district court to consider, for purposes of
determining attorneys' fees, whether the terms of the CICA policies were carefully explained to the
policyholders, whether the policyholders diligently attempted to understand the policies, and whether
the policyholders purchased the policy primarily for insurance or as an investment.
12. As we discussed earlier in this opinion, the certification order explains that class members
who would prefer to maintain life insurance coverage could simply opt out after receiving notice or
permissibly choose to forgo the remedy while still being bound by the judgment. Nonetheless,
Citizens attacks the certification order for barely mentioning whether a conflict of interest exists
between Dr. Hakim and the class. To the contrary, the district court's order expressed concern over
ensuring that certain class members retain their life insurance coverage if they so desire, and states
that such concern is the reason for the last sentence of the class definition. Clearly, the district court
directed serious attention to the issue of a potential conflict of interest.